**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

ADAR BAYS, LLC                                    Index   No.: 17-cv-1175 (ALC)
      Plaintiff,

-against-

GENESYS ID, INC. f/k/a/ RX SAFES, INC.
Defendant.
--------------------------------------------------------X


<u>**GENESYS ID, INC. f/k/a/ RX SAFES, INC'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS**</u>


 Mark R Basile, Esq. [MB-2201]
**The Basile Law Firm P.C.**
*Attorneys for Defendant*
400 Jericho Turnpike - Ste. 104
Jericho, New York 11753
Tel. 516.455.1500
mark@thebasilelawfirm.com

## **TABLE OF CONTENTS**

Pages

TABLE OF AUTHORITIES                                                                iii

APPLICABLE STATUTES                                                               vi

PRELIMINARY STATEMENT                                                           1

STATEMENT OF FACTS                                                                3

LEGAL ARGUMENT                                                                      6

POINT I
THE CONVERTIBLE NOTE IS A LOAN SUBJECT TO N.Y. USURY LAWS        7

POINT II
USURY IS DETERMINED AT THE TIME LOAN IS MADE IN NEW YORK          9

POINT III
THE CONVERSION DISCOUNT VALUE OF 35%, RESERVED TO PLAINTIFF
AT THE TIME THE LOAN WAS MADE IS INTEREST TO BE INCLUDED IN
USURY ANALYSIS AND VIOLATES NEW YORK CRIMINAL USURY LAWS        10

POINT IV
THE VALUE OF THE RESERVATION OF 278,000 SHARES RESERVED TO
PLAINTIFF AT THE TIME OF THE LOAN IS INTEREST UNDER NY LAW AND
VIOLATES NEW YORK CRIMINAL USURY LAWS                                      13

POINT V
THE DEFAULT RATE(S) OF INTERST RESERVED AT THE TIME THE
LOAN WAS MADE VIOLATES NEW YORK CRIMINAL USURY LAWS          15

POINT VI
USURIOUS INTENT IS CLEAR FROM THE FOUR CORNERS OF THE
NOTE                                                                                       18

POINT VII
CRIMINALLY USURIOUS LOANS IN NEW YORK ARE VOID UNDER
G.O.L. §5-511                                                                            19

POINT VIII
NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS                        22

CONCLUSION                                                                             25

ADDENDUM ............................................................................................................ 26

## TABLE OF AUTHORITIES

**Pages**

*Abir v. Malky, Inc.,*
  2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.) ......................2, 7, 18

*Alibatya v. N.Y. Univ. (In re Alibatya),*
  178 B.R. 335, 336 (Bankr. E.D.N.Y. 1995) ...........................................................8

*Aquila v. Rubio,*
  2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.) ....................9

*AWG Leasing Tr. V. United States,*
  592 F. Supp. 2d 953 (N.D. Ohio 2008) ........................................................ 11-12

*Bakhash v. Winston,*
  2015 NY Slip Op 08966, 134 A.D.3d 468, 19 N.Y.S.3d 887 (App. Div.) ...............................2

*Balaber-Strauss v. Murphy (In re Murphy)*
  331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005) ......................................................23

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.,*
  2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.) ..... 11-12, 14, 17, 18, 19, 22

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.,*
  310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) ....................................................7,15-17

*Brodie v. Schmutz (In re Venture Mort. Fund, L.P.),*
  282 F.3d 185 (2d Cir. 2002) ................................................................. 18, 20-21

*Curtiss v. Teller,*
  157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913) ........................................1, 18, 22

*Custom Chrome, Inc. v. Commissioner,*
  217 F.3d 1117 (9th Cir. 2000) ................................................................. 11-12

*Fareri v. Rain's Int'l, Ltd.,*
  187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992) ...................................2, 17

*Feinberg v. Old Vestal Rd. Assocs.,*
  157 A.D.2d 1002, 550 N.Y.S.2d 482 (App. Div. 1990) ...........................................7

*Funding Grp., Inc. v. Water Chef, Inc.,*
  2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.) .......................8, 13

*Giventer v. Arnow,*
  37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975) ......................................2

*Hammelburger v. Foursome Inn Corp.*,
    *54 N.Y.2d 580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981*) ...................................2

*Hillair Capital Invs., L.P. v. Integrated Freight Corp.*,
    *963 F. Supp. 2d 336 (S.D.N.Y. 2013)*....................................................................10

*Hufnagel v. George*,
    *135 F. Supp. 2d 406 (S.D.N.Y. 2001)*...........................................................18,21

*In re Colad Grp., Inc.*,
    *324 B.R. 208, 222(Bankr. W.D.N.Y. 2005)* .........................................................2

*In re Estate of Jackson*,
    *120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986)* ........................................9

*In re Grand Union Co.*,
    *219 F. 353 (2d Cir. 1914)* ....................................................................................9

*In re Rosner*,
    *48 B.R. 538 (Bankr. E.D.N.Y. 1985)* ...........................................................17-18

*Lenz v. Associated Inns & Restaurants Co. of Am.*,
    833 F. Supp. 362, 377 (S.D.N.Y. 1993) ...............................................................3

*LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*,
    *2015 NY Slip Op 32232(U) (Sup. Ct.)*..................................................................7

*Lowe v. Waller*,
    *Doug. 736*...........................................................................................................7

*Madden v Midland Funding*,
    No. 11-CV-8149 (CS), 2017 U.S. Dist. 27109 (S.D.N.Y. Feb. 27, 2017) .....................14,17

*Madonna v. U. S.*,
    878 F.2d 62, 65 (2d Cir. 1989)..............................................................................6

*New Earthshell Corp. v. Jobookit Holdings Ltd*,
    No. 14-CV-3602 (JMF), 2015 U.S. Dist. LEXIS 27141 (S.D.N.Y. Mar. 4, 2015)............8

*Orvis v. Curtiss*,
    *157 N.Y. 657, 661, 52 N.E. 690, 691 (1899)*........................................................7

*Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.)*,
    *311 B.R. 781 (Bankr. E.D. Mo. 2004)*.............................................................9-10

*Phlo Corp. v. Stevens,*
    *00 Civ. 3619 (DC), 2001 U.S. Dist.17490, at \*12 (S.D.N.Y. Oct. 25, 2001)* ................. 11-12

*Pryor v. Fisher* (In re Dimino),
    *429 B.R. 408, 419 (Bankr. E.D.N.Y. 2010)* .......................................................... 2

*Reves v. Ernst & Young,*
    494 U.S. 56, 110 S. Ct. 945 (1990) ........................................................................ 8

*Rothstein v. Isolation Film LLC,*
    *2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)* ...................................... 6,19,22-23

*Russkaya Reklama, Inc. v. Milman,*
2015 NY Slip Op 25103, 9 N.Y.S.3d 759 (App. Div.) .............................................. 2

*Sabella v. Scantek Med., Inc.,*
    *2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009*) ................................................... 10

*Sellers v. M.C. Floor Crafters, Inc.,*
842 F.2d 639, 642 (2d Cir. 1988) ............................................................................ 6

*Szerdahelyi v. Harris,*
    *67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986)* ............................... 1-2, 18, 21-24

*Union Capital Ltd. Liab. Co. v. Vape Holdings Inc. & Island,*
    *No. 16-cv-1343 (RJS), 2016 U.S. Dist. 72973 (S.D.N.Y. Mar. 8, 2016)* ......................... 8, 16

*Ujueta v. Euro-Quest Corp.,*
    *2006 NY Slip Op 4074, 29 A.D.3d 8957* .............................................................. 7

*Venables v. Sagona,*
    *2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div.)* .............................. 18

### The New York Usury Statutes Applicable to this Motion

**NY CLS Gen. Oblig. §5-501 <u>Rate of Interest; Usury Forbidden</u>**

*Except as otherwise provided by law**, interest shall not be charged, taken or received on any loan or forbearance at a rate exceeding such rate of interest as may be authorized by law <u>at the time the loan or forbearance is made</u>**, whether or not the loan or forbearance is made pursuant to a prior contract or commitment providing for a greater rate of interest…(emphasis added, <u>double emphasis added</u>)*

**§190.40 <u>Criminal Usury in the Second Degree.</u>**

*A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, **at a rate exceeding twenty-five per centum per annum** or the equivalent rate for a longer or shorter period.  Criminal usury in the second degree is a class E felony. (emphasis added)*

**NY CLS Gen. Oblig. §5-521(3) <u>Corporations Prohibited from Imposing The Defense of Usury.</u>**

*(3) The provisions of subdivision one of this section shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.*

**NY CLS Gen. Oblig. §5-511 <u>Usurious Contracts Void</u>**

*All bonds, bills, **notes,** assurances, conveyances, all other contracts or **securities** whatsoever…whereupon or whereby there shall be **reserved or taken**, or secured or **agreed to be reserved or taken**, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, **shall be void**…*

<u>**PRELIMINARY STATEMENT**</u>

This motion is brought pursuant to F.R.C.P. 12(c) to dismiss the complaint for failure to state a claim upon which relief can be granted. The Note being sued upon by Plaintiff charges a usurious rate of interest in contravention to New York State Usury Statutes, and is void as a matter of law. Equally so, no equitable remedies are available to plaintiff to save this action as a matter of New York State policy and case law.  The New York State usury laws are both complicated and confusing, sometimes resulting in decisions inconsistent with the usury statutes as well as state appellate division case law. In fact, modern financial instruments have been written by lenders to take advantage of this complexity, making finding Usury more complicated through clever, and sometimes, unrecognizable yet discreet interest disguises.

**Brief History of Usury in New York**

Since the founding of this nation, the courts in New York have taken a strong position against enforcing payments with a rate of interest above what is permitted by law. 'The "Statute of Anne" (1713), which fixed a maximum rate of interest at five percent for all loans, was the model followed.'  *Franklin W. Ryan, MBA, Ph.D, Usury and Usury Laws (1924).* In New York State, the leading case on this matter is <u>*Curtiss v. Teller,*</u> 217 N.Y. 649 (N.Y. Ct. of Appeals, 1916) in which the court held that usury statutes declare the usurious transaction void and provide for forfeitures and penalties against the usurer.  The decision from the New York Court of Appeals in 1916 was affirmed again in <u>*Szerdahelyi v. Harris,*</u> *67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986).*  The Court of Appeals in <u>*Szerdahelyi*</u> also analyzed the history surrounding usury laws and noted that the interpretation of the usury statutes in <u>*Curtiss*</u> is correct and conformed most to this state's view on the matter (held that a usurious transaction is *void ab initio*, and a return of excess interest cannot save to the lender the money actually

advanced, or the interest due on the loan) *Id.* At the time *Szerdahelyi* was being heard, the New

York State Legislature made further revisions to the usury laws due to the evolving complexity

of financial crimes such as loan-sharking. *Id* at ¶¶49-50.  Criminal activities such as loan-

sharking have been described by the courts in New York as, "*one of the most heinous, virtually*

*bloodsucking criminal activities of all times." Hammelburger v. Foursome Inn Corp., 54 N.Y.2d*

*580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981*).  The Legislature in New York subsequently

enacted comprehensive legislation to deal with this problem, the express intent of which was

to "*amend the penal law and the general obligations law, in relation to criminal usury and*

*possession of records of a criminally usurious loan*" (L 1965, ch 328; *see*, 1965 NY Legis Ann,

at 49). Usurious loans are void under NY Usury Laws, regardless of whether they violate the

civil section of §5-501 **[***See Giventer v. Arnow, 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366*

*(1975), In re Colad Grp., Inc., 324 B.R. 208, 222(Bankr. W.D.N.Y. 2005), Pryor v. Fisher (In*

*re Dimino),429 B.R. 408, 419 (Bankr. E.D.N.Y. 2010)*]**]**, or the criminal section under Penal Law

§190.40 **[***See Bakhash v. Winston, 2015 NY Slip Op 08966, 134 A.D.3d 468, 19 N.Y.S.3d 887*

*(App. Div.), Fareri v. Rain's Int'l, Ltd., 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div.*

*1992), Abirv v. Malky, Inc., 2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App.*

*Div.), Russkaya Reklama, Inc. v. Milman, 2015 NY Slip Op 25103, 9 N.Y.S.3d 759 (App. Div.)*]**]**.

(held in all these cases that usurious transactions are void as a matter of law).

2

## Statement of Facts

### The Parties.

According to the First Amended Complaint, plaintiff is a New York "limited liability company."  (*See* FIRST AMENDED COMPLAINT, DKT#18 at ¶1) However, the First Amended Complaint lacks the specificity required by Federal law to assure proper diversity between its members. See <u>Lenz v. Associated Inns & Restaurants Co. of Am.</u>, 833 F. Supp. 362, 377 (S.D.N.Y. 1993). The amended complaint properly alleges that defendant "is a Nevada corporation." <u>Id</u> at ¶2.

### The First Amended Complaint.

Plaintiff alleges that this Court has original jurisdiction pursuant to 28 U.S.C. §1332(a)(2). <u>Id</u> at ¶3. Plaintiff is claiming no less than $150,000.00 in damages in its First Claim for Relief arising out of a breach of the SPA. <u>Id</u> at ¶¶ 47-52. Plaintiff's Second Claim for Relief, also in the amount of $150,000.00, alleges a breach arising out of the Note. <u>Id</u> at ¶¶53-58.  Plaintiff's Third Claim for Relief is in the amount of $150,000.00 for unjust enrichment. <u>Id</u> at ¶¶59-62. The Fourth Claim for Relief is for anticipatory breach of the Note and SPA. <u>Id</u> at ¶¶63-68. The Fifth Claim for Relief is for costs, expenses, and attorney's fees.  <u>Id</u> at ¶¶69-71. The amended complaint filed in this action also includes exhibits consisting of the Note (DKT#18 Ex. "B"), a Stock Purchase Agreement (DKT#18 Ex. "A") and a Conversion Notice (DKT# 18 Ex. "C").

### The 8% Convertible Redeemable Note.

#### Date of Loan

The parties entered into a loan reflected by an 8% Convertible Redeemable Note executed on May 24, 2016. (*See DKT#18*, Ex. "B").

**Amount of Loan**

As set forth in the Note, the principal amount of the loan is for $35,000.  (*Id*. Ex. B).

**Face Interest Rate**

The face of the Note provides for a per annum interest rate of 8%.  (*Id*)

**Conversion Option Discount Percentage**

In addition to repayment by defendant in cash, the face of the Note also provided for a

right of conversion into defendant's common stock at the exclusive option of

plaintiff.  Paragraph 4 of the face of the Note states that:

*"The Holder of this Note is entitled, at its option, at any time and after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock")…"* <u>*Id*</u>*. at ¶4(a).*

Paragraph 4(a) also provides for the computation method of the conversion

price that operates to guarantee plaintiff's contracted for rate of return regardless of the trading

price of the underlying common stock on any given day. Paragraph 4(a) states:

*"...at a price ("<u>Conversion Price</u>") for each share of Common Stock equal to **65% of the <u>lowest trading price</u>** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("<u>Exchange</u>"}, for **the twenty prior trading days** including the day upon which a Notice of Conversion is received by the Company or its transfer agent (provided such Notice of Conversion is delivered by fax or other electronic method of communication to the Company or its transfer agent after 4 P.M. Eastern Standard or Daylight Savings Time if the Holder wishes to include the same day closing price)." <u>Id</u>.*

**Reservation of Shares**

The Note required defendant to agree to reserve on account of plaintiff, 278,000 shares of

Company's common stock.  The reservation of shares provisions in ¶12 of the Note states:

4

*"The Company shall issue irrevocable transfer agent instructions reserving 278,000 shares of its Common Stock for conversions under this Note (the "Share Reserve"). Upon full conversion of this Note, any shares remaining in the Share Reserve shall be cancelled. The Company shall pay all costs associated with issuing and delivering the shares.  If such amounts are to be paid by the Holder, it may deduct such amounts from the Conversion Price." Id. at ¶12*

**Penalty Provisions**

Paragraph 8, on the face of the Note, sets forth the purported remedies in the event of default. Paragraph 8(n) includes a default interest rate of 24% or the highest rate legally allowed.

Paragraph 8(n) states:

*"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." Id. at ¶8(n)*

Paragraph 8(n) also includes daily penalties in addition to the 24% default interest rate, that would accrue at $250.00 per day that the shares are not issued upon conversion. *Id*.

Paragraph 8(n) states:

*"In the event of a breach of Section 8(k) the penalty shall be $250 per day the shares are not issued beginning on the 4th day  after the conversion notice was delivered to the Company." Id.*

Furthermore, after the 10th day of failure to issue, the penalty is increased to $500.00 per day:   *"This penalty shall increase to $500 per day beginning on the 10[th]day." Id*.

On top of the daily accrual of penalties, the outstanding principal will also increase by 20% for violation of ¶8(n) and 50% for a violation of ¶8(i);

*"The penalty for a breach of Section 8(n) shall be an increase of the outstanding principal amounts by 20%. In case of a breach of Section 8(i), the outstanding principal due under this Note shall increase by 50%" Id. ¶8(n)*

Paragraph 8(n) includes a "make-whole" provision that utilizes a formula to determine "loss" being: **Loss = (high trade price at any time on or after the day of exercise) x (number of conversion shares)**. *Id*. This formula does not "make-whole" the lender as a result of a failure to deliver.  Instead, it guarantees a fixed rate of return in excess of what lender could have

received if defendant issued the shares.  Paragraph 8(n) containing the "make-whole" provision

states:

*"At the Holder's election if the Company fails for any reason to deliver to the Holder the conversion shares by the by the 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the Company written notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows: **Failure to Deliver Loss= [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)].***

*The Company must pay the Failure to Deliver Loss by cash payment, and any such cash payment must be made by the third business day from the time of the Holder's written notice to the Company." Id.*

### Default Interest Rate

If an "Events of Default" occurs as is defined in ¶8 of the Note, plaintiff has the ability to

adjust the interest rate on the outstanding principle balance from 8 percent to 24 percent per

annum.  The default interest rate section of the Note on its face reads:

*"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law" id.*

## LEGAL ARGUMENT

*Legal Standard:*

The Federal Rules of Civil Procedure permit a party to move for judgment on the

pleadings after the pleadings are closed. See Fed. R. Civ. P. 12(c). "Judgment on the pleadings is

appropriate where material facts are undisputed and where a judgment on the merits is possible

merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842

F.2d 639, 642 (2d Cir. 1988). The standard for ruling on a Rule 12(c) motion mirrors a motion to

dismiss under Rule 12(b), in that "the court must view the pleadings in the light most favorable

to, and draw all reasonable inferences in favor of, the nonmoving party." *Madonna v. U. S.*, 878

F.2d 62, 65 (2d Cir. 1989).  *See* <u>*Rothstein v. Isolation Film LLC*</u>, 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017) where J. Buchwald of this district held that the underlying obligation being sued upon was criminally usurious, void as a matter of law, and dismissed the complaint pursuant to Fed. R. Civ. Pro. §12(b)(6). Should this court find that the underlying transaction on its face is criminally usurious, then it must dismiss the complaint with prejudice and award defendant the relief it seeks.

## POINT I

## THE CONVERTIBLE NOTE IS A LOAN SUBJECT TO NEW YORK USURY LAWS

The usury laws are applicable to only loans or forbearances.  *See* <u>*Orvis v. Curtiss*</u>, *157 N.Y. 657, 661, 52 N.E. 690, 691 (1899)*, <u>*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*</u>, *310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003)* (held that defense of usury must be founded upon a loan or forbearance of money). The plain language of §5-501 states, "*interest shall not be charged, taken or received on any* **loan or forbearance** *at a rate exceeding such rate of interest as may be authorized by law* **at the time the loan or forbearance is made**.*" NY CLS Gen. Oblig. §5-501.* (*Emphasis added*). Entities in the business of providing usurious loans often try to evade the limitations of the usury laws by labeling what is actually a loan as something else, such as an "investment."  However, in order for the transaction to be a loan, the courts look to the substance, rather than the form.  <u>*Abir v. Malky, Inc.*</u>, *2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.)*, <u>*Ujueta v. Euro-Quest Corp.*</u>, *2006 NY Slip Op 4074, 29 A.D.3d 895, 814 N.Y.S.2d 551 (App. Div.)*, <u>*Feinberg v. Old Vestal Rd. Assocs.*</u>, *157 A.D.2d 1002, 550 N.Y.S.2d 482 (App. Div. 1990). See* <u>also *Lowe v Waller, Doug*</u>. *736, Court of King's Bench in England, 1756-1793.*  Some recent court decisions in this district have continued to rule consistently that a convertible note is a loan. *See* <u>*LG Capital Funding, LLC*</u>

*v. Sanomedics Int'l Holdings, Inc.*, *2015 NY Slip Op 32232(U) (Sup. Ct.)* (held that the initial transactions are loans until holder exercises option to convert which in turn would change the status of the loan into an investment) *Id.*  A loan consists of 3 basic elements: 1) a lender 2) a borrower and 3) absolute repayment of principal amount. *Id., Sanomedics* at ¶¶24-25.

See also *Alibatya v. N.Y. Univ. (In re Alibatya), 178 B.R. 335, 336 (Bankr. E.D.N.Y. 1995)* (held that critical element of loan is the **absolute repayment** of original sum

transferred) (transaction becomes an investment once holder bears some degree of risk on the repayment of the initial loan). If the holder never exercises the option, then he is at the very minimum, guaranteed his return on the principal balance. *Id.*  The court in *Funding Grp., Inc. v. Water Chef, Inc.,* *2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup.*

*Ct.)* noted, *"In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the [\*\*\*\*6] lender (Id. At 434). See Union Capital Ltd. Liab. Co. v. Vape Holdings Inc. & Island, No. 16-cv-1343 (RJS), 2016 U.S. Dist. 72973 (S.D.N.Y. Mar. 8, 2016)* (opinion of J. Sullivan affirming the transaction starts out as a loan) *Id.*[1] This transaction is a loan involving the plaintiff (lender) and defendant (borrower) for the principal amount of $35,000.00.  (See DKT#18, Ex. "B"). The Note states:

> *"**FOR VALUE RECEIVED**, **RX Safes, Inc. (the "Company") promises to pay to the order of ADAR BAYS, LLC** and its authorized successors and permitted assigns ("Holder"), the aggregate principal face amount of THIRTY-FIVE THOUSAND DOLLARS exactly (U.S. $35,000.00) on May 24,2017."* *Id.*

---

[1] It is also doubtful that this note is a security under *Reves v. Ernst & Young*, 494 U.S. 56, 110 S. Ct. 945 (1990). *See also New Earthshell Corp. v. Jobookit Holdings Ltd*, No. 14-CV-3602 (JMF), 2015 U.S. Dist. LEXIS 27141 (S.D.N.Y. Mar. 4, 2015). See Lorraine Yarde Decl., ¶¶4-6)

The plain meaning of the language employed on the face of the Note shows that defendant was obligated to pay back the principal amount loaned on May 24, 2017.  The May 24, 2016 Note is simply a loan with an exclusive option of the plaintiff to convert the loan into shares at some future time. *See Union* (J. Sullivan treated the note with a principal balance of $75,000 bearing an annual interest rate of 8% as a loan applying this risk analysis and noted that lender could have redeemed for cash eliminating the risk on return of initial amount). That on May 24, 2016 an agreement was formed for a loan of money and what it may become in the future is irrelevant to the usury analysis.  See *In re Grand Union Co., 219 F. 353 (2d Cir. 1914)* (held transaction at issue to be a loan when in writing designated as a sale).  In *Grand Union Co.*, the honorable J. Rogers noted that ordinarily courts will presume that a term has been used correctly in its technical sense but upon an analysis of the writing in its entirety the facts will reveal the true nature of the instrument. Plaintiff intended to and did transfer a sum of money to defendant on the condition of **absolute repayment**, evidenced by the May 24, 2016 Note.  The repayment of the loan is either in cash or in stock (at the lenders sole option). The Note represents a loan of money and thus subject to the New York Usury Laws.

## POINT II

## USURY IS DETERMINED AT THE TIME LOAN IS MADE IN NEW YORK

The courts are required to analyze usury specifically and **only at the time the loan is made**.  This requirement is taken directly from the plain language of §5-501(4) that explicitly states, "…*at the time the loan or forbearance is made.*" *NY CLS Gen. Oblig. §5-501(4)*. The statute is further supported by State Court decisions that held that usury laws are applied at the time the loan is created and subsequent events thereafter are irrelevant.  *See In re Estate of*

9

*Jackson,* 120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986) (held that the usurious nature of a contract is determined at the time it was entered into). *Id.  See also Aquila v. Rubio,* 2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.) (affirming decision in *In re Estate of Jackson* that usury is to be determined as of the time that the contract or obligation is entered into) *Id.*   In *Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.), 311 B.R. 781 (Bankr. E.D. Mo. 2004)*, the parties exchanged (transferred) promissory notes for convertible notes with options to convert to preferred stock. (held that in valuing the worth of the option, it was irrelevant what happened subsequent to the "transfer" of the option; the court properly noted that it must examine the transaction at the actual time of transfer or in other words when the option was created). *Id.*

Defendant's Note was issued to Plaintiff on May 24, 2016. (See First Amended Complaint, DKT#18, at ¶6). Therefore, May 24, 2016 is the date to determine whether its terms are usurious.

## POINT III

### THE CONVERSION DISCOUNT VALUE OF 35%, RESERVED TO PLAINTIFF AT THE TIME THE LOAN WAS MADE IS INTEREST TO BE INCLUDED IN USURY ANALYSIS AND VIOLATES NEW YORK CRIMINAL USURY LAWS.

The usury statutes are very clear: amounts reserved to the lender, at the time the loan is made, are included as interest charges under the states usury analysis by the plain meaning of the statute and case law.  It doesn't matter what, if anything different, that the usurer ultimately collects, the analysis is focused only at the time the loan is made. Courts have held convertible notes to be hybrid financial instruments containing both an unsecured debt and an option component with its own value.  *Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.), 311 B.R. 781 (Bankr. E.D. Mo. 2004)* (held that unsecured

10

debt component and option in convertible note have discrete values and thus should be valued separately) *See Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, *963 F. Supp. 2d 336 (S.D.N.Y. 2013)* (held that value of stock option is critical in calculating true amount of loan as well as effective interest rate)  See also, *Sabella v. Scantek Med., Inc., 2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009*) (affirming holding that value of common stock given to lender should be taken into account when calculating interest rates)  The underlying reasoning of these decisions is that the company issuing stock is agreeing to give something up of value to the lender. *(See In re Bridge Info. Sys,* noting possible proceeds from sale of stock option to third party as "opportunity cost") *Id*. In N.Y., a loan is usurious when the lender is entitled to the principal balance along with a legal rate of interest plus additional payment contingent on an event that is out of borrower's control.  *Phlo Corp. v. Stevens, 00 Civ. 3619 (DC), 2001 U.S. Dist.17490, at *12 (S.D.N.Y. Oct. 25, 2001)* (noting that this "contingent right", referring to stock option, is something of value and should be considered in interest calculation.) *Id*.  In *Custom Chrome, Inc. v. Commissioner, 217 F.3d 1117 (9th Cir. 2000),* (holding that any excess to lender from an OID transaction should be characterized as interest,) the court properly stated that warrants are equivalent to options and in valuing them should be treated as original issue discount (OID). *Id*.  See also, *AWG Leasing Tr. V. United States, 592 F. Supp. 2d 953 (N.D. Ohio 2008)* (noting that original issue discount is the difference between the redemption price at maturity and issue price and therefore a type of interest) *Id.* Defendant contends that ADAR has "disguised" interest charges in an attempt to evade the usury laws as the lender did in *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc., 2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.)* (held the

$200,000.00 deposit "against future commitment fee" an additional interest charge and in violation of criminal usury) *Id.*

Plaintiff has reserved to itself a 35% discount as to the market price of defendant's public stock at, and, at all times from the inception of the loan, until all amounts under the loan are repaid by way of a cash payment, or the conversion of debt into stock. The 35% discount is reserved interest that has a separate value that is legally required to be included in the usury analysis because for each $1.00 of principal and interest, defendant is required to pay back $1.35. The Note provides that **plaintiff has the sole option** to convert the principal balance into shares of defendant's common stock. (See DKT#18, Ex. "B" at ¶4(a)). Paragraph 4 of the Note states:

*"The Holder of this Note is entitled, **at its option,** and after full cash payment for the shares convertible hereunder, after 180 days from the date of the note**, to convert all or any amount** of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "*Common Stock*") at a price ("*Conversion Price*") for each share of Common Stock **equal to 65% of the lowest trading price**..."*

Under this provision of the Note, plaintiff is entitled to acquire defendant's company stock at a fixed discount of 35% after 180 days from the date of the note. Regardless of the trading price of the stock on any given day, ¶4(a) guarantees this fixed rate on the **lowest** trading price from the prior 20 days upon the notice to convert. *Id.* In other words, there is no risk of loss to plaintiff upon conversion, which is normally a factor involved in any investment. Under ¶4(a), plaintiff can exercise this conversion right at any time and for any amount of the principal balance. The right to convert is exclusively in the control of the plaintiff. As the court noted in *Blue Wolf Capital Fund II, L.P.*, if the event is entirely in the control of the lender then it should count towards additional interest charges. *Id.* Additionally, the 35% stock option discount is an original issue discount (OID) and should be treated as such. The option component of the note includes an OID because defendant is issuing a debt instrument

containing a discounted stock option that is clearly reflected at the time the principal balance is due as in *AWG Leasing Tr. v. United States*.  Plaintiff will always receive 35% more on each dollar that it converts into stock under the note because it reserved that 35% discount at the time the loan was entered into.  In turn, plaintiff has reserved to itself 35% more in actual value at the time the loan was made, insulating itself from all risk, even at the time of conversion. Just as in *Phlo Corp. v. Stevens* and *Custom Chrome, Inc. v. Commissioner*, being an OID, the court must include the 35% discount rate in its interest computations that lender reserved to itself at the time the loan was made.

### POINT IV
### THE VALUE OF THE RESERVATION OF 278,000 SHARES RESERVED TO PLAINTIFF AT THE TIME OF THE LOAN IS INTEREST UNDER NY LAW AND VIOLATES NEW YORK CRIMINAL USURY LAWS.

The reservation of 278,000 shares, at the time that the loan was made also renders this loan criminally usurious.  At the time the loan was made, the plaintiff required that defendant set aside and unconditionally reserve to the plaintiff 278,000 shares of its stock under the note. (See DKT #18, Ex. "B" at ¶12). The defendant was required to and did issue an irrevocable transfer agent instruction letter reserving these shares to plaintiff on May 24, 2016. (*See Decl. of Lorraine Yarde, Ex. "B"*). The irrevocable transfer agent letter effectively sequestered and reserved that stock to make it available on account for Plaintiff, to effectuate future repayment conversions of the loan into equity. The usury statute's specific language states "*reserves, or agrees to reserve to the lender*". The quantity of stock so reserved is 3 times the amount of stock that plaintiff could convert into, at its fixed 35% discount to market.

§5-511 states:

"*whereupon or whereby there shall be **reserved or taken**, or secured or **agreed to be reserved or taken**, any greater sum, or greater value, for the loan** or forbearance of any money…shall be void…*"

13

The plain meaning of §5-511 prohibits the actions taken by plaintiff.  Paragraph 12 of the Note states:

*"The Company shall issue irrevocable transfer agent instructions **reserving 278,000 shares** of its Common Stock for conversions under this Note…The company should at all times **reserve a minimum of three times the amount of shares required** if the note would be fully converted."* (See First Amended Complaint, DKT #18 Ex. "B" at ¶12)

See *Funding Grp., Inc. v. Water Chef, Inc.,* *2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.)* (held that loan violated civil and criminal usury statutes of N.Y. when lender reserved himself an illegal rate of interest) *Id.* The plain language of ¶12 of the Note read in accordance with §5-511 demonstrates that the Note is usurious on its face.  Plaintiff in this case has "*reserved*" a "*greater sum*" for the loan issued to defendant.  On the date the Note was entered into (May 24, 2016), defendant's common stock was trading at a price of $.52 per share.  (*See Decl. Lorraine Yarde, Ex "A.,"* at ¶4). Paragraph 12 of the Note requires defendant to maintain three times the amount of shares needed for conversion of the entire principal balance or 278,000 shares of common stock at the time the loan was made.  (See DKT #18, Ex. "B" at ¶12). The value of the plaintiff's reservation of shares is the product of the number of shares and the trading price on the day the Note was executed.  The value of the reservation of shares on the date the note was entered into was $144,560.00 based on the loan amount of $35,000.00.  That is over 400% of the value of the original loan amount or 400% interest being charged to defendant under *Blue Wolf Capital Fund II L.P,* 2013 NY Slip Op 1483 (App. Div.). This court must recognize that the reservation of shares in ¶12 of the Note constitutes interest and thus must be computed together with all other interest charges that plaintiff has embedded within the Note.

<u>POINT V</u>
## <u>THE DEFAULT RATE(S) OF INTERST AT THE TIME THE LOAN WAS MADE VIOLATES NEW YORK CRIMINAL USURY LAWS</u>

The existence of a default provision does not automatically render a contract

usurious.  However, in this case ¶8(n) of the Note contains such provisions and imposes penalties

that are not permissible by law.  Opposing counsel will claim that the usury laws do not apply to

defaulted obligations but they would be ignoring a recent decision from this

district. *See* <u>*Madden v. Midland Funding, LLC,*</u> *No. 11-CV-8149 (CS), 2017 U.S. Dist. 27109*

*(S.D.N.Y. Feb. 27, 2017)* (held that the criminal usury cap setting the maximum interest rate at

25% does apply to defaulted obligations). The decision in <u>*Madden*</u> is the proper application of

this state's usury laws. The Default section of the note at ¶8(n) states:

*"Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or,
if such rate is usurious or not permitted by current law, then at the highest rate of interest
permitted by law." <u>Id</u>.*

Within that default section, there are default penalties (disguised default

interest) that constitute interest charges that cause the stated default interest rate of 24% to

actually exceed the criminal usury cap depending on the duration of the event of

default.  Paragraph 8(n) states,

*"In the event of a breach of Section 8(k) the penalty shall be **$250 per day** the shares are not
issued beginning on the 4th day after the conversion notice was delivered to the Company.
This penalty shall increase to **$500 per day** beginning on the 10th day. The penalty for a breach
of Section 8(n) shall be an **increase of the outstanding principal amounts by 20%.** In case of a
breach of Section 8(i), **the outstanding principal due under this Note shall increase by 50%**.
Further, if a breach of Section 8(m) occurs or is continuing after the 6-month anniversary of the
Note, then the Holder shall be entitled to use the lowest closing bid price during the delinquency
period as a base price for the conversion...If this Note is not paid at maturity,
the **outstanding principal due under this Note shall increase by 10%**." (See DKT #18, Ex."B"
at ¶8(n))*

This court only needs to look to the four corners of the Note to find that the default provisions are usurious.  *See Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp., 310 F. Supp. 2d 556 (S.D.N.Y. 2003)* "A damages clause is contrary to public policy when its purpose is not to compensate the injured party for the breach, but rather to "impose a **penalty** on the breaching party by requiring payment of a sum of money 'grossly disproportionate to the amount of actual damages." *Id.* At 566. (held that Courts must measure the validity of a liquidated damages clause at the time the parties entered into the agreement at issue, not at the time of the breach) *Id.* [2]

The default interest rate under the note is 24%, just below the criminal usury cap.  The Note states that if defendant is not able to issue the shares within 3 days from the notice to convert then, "*…the penalty shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered…"*  Additionally, "*…penalty shall increase to $500 per day beginning on the 10th day."* (See DKT #18, Ex. "B" at ¶8(n)). To date of this motion, Plaintiff will expect $22,000 in liquidated damages (hidden default interest) pursuant to this liquidated damages clause.  (See DKT #18, at ¶17; where plaintiff states the start date of the accruing penalty being December 2016 at $250/day then increasing to $500/day on December 7, 2016). In analyzing this amount of damages the court must compare it to the amount plaintiff was entitled to as if there was no event of breach.  *Bristol Inv. Fund, Inc.* Paragraph 41 of the Amended Complaint states that default interest has accrued to $36,500.00 and continues to accrue daily.  Simply looking at these two figures alone, plaintiff could expect a return of $58,500 on a $35,000 loan. That amount is equivalent to approximately 167% of the original loan amount, notwithstanding the 24% increase per annum to be factored in and the other

---

[2] See also *Union Capital Ltd. Liab. Co. v. Vape Holdings Inc. & Island*, No. 16-cv-1343 (RJS), 2016 U.S. Dist. 72973 (S.D.N.Y. Mar. 8, 2016) where Judge Sullivan found the exact same penalties were unconscionable, and violated public policy and unenforceable.

additional penalties such as (but not limited to) the make-whole provision (See DKT #18, Ex. B at ¶8(n)). It is clear that these penalties are unenforceable under both New York's policies, and the criminal usury statute. See _Union Capital Ltd. Liab. Co. v. Vape Holdings Inc. & Island_, No. 16-cv-1343 (RJS), 2016 U.S. Dist. LEXIS 72973 (S.D.N.Y. Mar. 8, 2016). If this court were to entertain plaintiff's calculations of damages, defendant would owe a grossly disproportionate amount as compare to the original loan amount.   As the court stated in _Bristol Inv. Fund, Inc.,_ "To award these additional liquidated damages...would provide...a recovery that is _grossly disproportionate to the amount of actual damages_." _Id. At 568_. The penalties in this section are unconscionable disguised default interest and in direct violation of this state's usury laws.  While the analysis applied in _Bristol Inv. Fund, Inc._ is correct, but the ultimate outcome was erroneous.  The only reason the court in that case did not side with the borrower asserting the defense of usury was that the court believed the affirmative defense was not applicable to defaulted obligations.

_"The damages about which Carnegie complains are available to Bristol only because Carnegie defaulted, and would not have been recoverable had Carnegie adhered to the terms of the agreements. Therefore, these damages are not subject to a usury analysis." Id._ At 564.

However, the Honorable J. Seibel recently ruled in _Madden_ that the usury defense does apply to defaulted obligations, supporting this state's position against lenders implementing excessive rates of interest. If the initial loan is void (_ab initio_ pursuant to GOL §5-511) because of criminal usury, then anything flowing from it is equally void, including default rates of interest. This is the **only** consistent reading when the statute renders the transaction void. The court in _Bristol Inv. Fund, Inc_. made them all too common mistake involved in usury cases by analyzing the time of default or breach as opposed to looking at the time of execution of the written instrument and what the lender reserved to itself under the loan. The default provisions

are clearly usurious on its face and recent federal decisions in this district support defendant's contention that to enforce these penalties would be contrary to public policy.

## POINT VI

## USURIOUS INTENT IS CLEAR FROM THE FOUR CORNERS OF THE NOTE

Usurious intent can be found by looking at the 4 corners of the Note and usurious intent is found as a matter of law. See _Blue Wolf Capital Fund II, L.P._ (held that if usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law). Intent is a critical element in a usury analysis. It is well-established that even if the lender didn't mean to violate the usury laws, if the note charges an interest rate in excess of the statutory rate, then it is immaterial whether lender intended to do so or not. _In re Rosner, 48 B.R. 538 (Bankr. E.D.N.Y. 1985) See also Fareri v. Rain's Int'l, Ltd., 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992)_ (held that transaction and supporting documents were void because as stipulated by the parties, the agreement was usurious on its face, thus usurious intent can be implied) _Id._ Courts have consistently ruled that when usury is determined to exist, that intent is implied. _Venables v. Sagona,_ 2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div.) See also _Abir v. Malky, Inc._, 2009 NY Slip Op 1432, 59 A.D.3d 646, 873 N.Y.S.2d 350 (App. Div.) and _Curtiss v. Teller,_ 157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913) (noting that **all** usurious agreements will be void and unenforceable).

In _In re Rosner_, the court noted that where the usurious intent is not found on the face of the note then usury becomes a question of fact. However, the "conversion discount option" (35%) and "share reserve requirement" (400%) as well as the "Default Remedies" as expressly stated in the Note, sets the interest rate well above the allowed 25% and establishes, as a matter

of law, plaintiff's intent to charge a usurious rate of interest. Plaintiff's intent to charge a criminally usurious rate is easily gleaned from the four corners of the Note within the meaning of the usury statutes as it did in *Blue Wolf.*

## POINT VII
## CRIMINALLY USURIOUS LOANS IN NEW YORK ARE VOID UNDER G.O.L. §5-511

It is well settled law in New York that criminally usurious loans are *void ab initio.*[3] *See Brodie v. Schmutz (In re Venture Mort. Fund, L.P.), 282 F.3d 185 (2d Cir. 2002)* (held that loan at issue was in violation of criminal usury statute bearing interest rate in excess of 25% and thus *void ab initio* either by virtue of §5-511 or as a matter of public policy) *See also Hufnagel v. George, 135 F. Supp. 2d 406 (S.D.N.Y. 2001)* (held that loan was void *ab initio* as a matter of law pursuant to §190.40 and §190.42).  The court in *Hufnagel* relied on the New York Court of Appeals decision in *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986) (held that all usurious transactions are void *ab initio* and the exception in §5-511 is only applicable to banks or savings associations). See *Rothstein v. Isolation Film LLC, 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)* (court properly noted that recent New York decisions have voided criminally usurious transactions after *Blue Wolf*). See *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.* (held that unless banker or lender association, criminally usurious transaction along with all collateral agreements are void and unenforceable under G.O.L. §5-511).

Plaintiff's Note violates G.O.L §5-501, §5-511 and Penal Law §190.40.  The effective interest rate is well above the 25% per annum maximum cap imposed by §190.40. To determine that criminally usurious loans are not void *ab initio* would require this court to ignore the New

---

[3] There is no precise definition of "well-settled" so this office has used a threshold of 75% of cases that held that criminally usurious loans are void ab initio. While this issue may be in question, it is the misapplication of the law and the policy behind it that has created this issue through those minority adverse decisions (See Addendum infra)

York Appellate Court decisions that unanimously state that a violation of Penal Law §190.40 voids the transaction *ab initio* pursuant to G.O.L. §5-511. (see Addendum).  Those decisions aligned with <u>*Blue Wolf*</u> are the correct and the proper application of this state's usury laws.  The law today pertaining to usury remains basically unchanged over its 142-year history in New York, that loans charging interest rates exceeding the usury limits are void as a matter of law and anything over the criminal usury level, violates New York's public policy.  This is evident by the specific inclusion of §190.40 and §190.42 into the General Obligations Laws reflecting the legislature's intent to expand grounds for relief and if applicable, impose additional sanctions on the usurer depending on the rate charged (criminal penalties).   The confusion surrounding the issue of whether criminally usurious contracts are void stem from the fact that prior decisions have improperly categorized usury into two "types."  The New York Legislature did not intend to create two different "types" of usury but instead enacted the criminal provision to create two "levels" of usury in a civil context.  The legislation did this specifically to ensure that entities that are capable of carrying out usurious loans to a greater degree cannot escape the grasps of §5-501 and §5-511 and intentionally and additionally punish those to a greater extent for charging rates exceeding the criminal usury threshold.  Even the plain language of each of the G.O.L statutes state in its headings §5-501 **"Usury Forbidden"**, and §5-511 **"Usurious Contracts Void"**.  They do not bifurcate usury into criminal or civil or say one is void, and not the other. Even the plain language of §5-501(6)(a)-(b) demonstrates that the legislature intended for different "levels" of usury under the General Obligations Laws since the civil level (16%) does not apply if the amount of the loan exceeds $250,000.00.  The same "civil" statute also makes clear that §190.40 and §190.42 do not apply to loans over $2,500.000. Those are the legislative usury threshold levels set by New York's Legislature.

**The 2002 Second Circuit Court of Appeals Decision**

The Second Circuit Court of Appeals last addressed this issue (in dicta only) in 2002 in the case _Brodie v. Schmutz (In re Venture Mort. Fund, L.P.)_, 282 F.3d 185 (2d Cir. 2002). Prior to the _Brodie_ case, courts in this district have unconditionally recognized that usurious loans are void as a matter of law. However, in _Brodie,_ the 2nd Circuit raised the seemingly undecided question of whether the application of the criminal usury statute provides for voiding a criminally usurious loan because §190.40 does not expressly say such loans are void. The Second Circuit in _Brodie_ seemingly focused on the language solely in §190.40 instead of looking at the "body of usury law" that would have to include the General Obligations Laws, Sec. 5. The court in _Brodie_ stated, "_the statutory provisions that bear upon whether a criminally usurious loan is void (without answering the question) are set forth in the margin._"  However, since _Brodie_, there is still some obvious confusion among some Federal Courts in this District, as well as some New York State Supreme Courts regarding this issue. The courts that have held that criminally usurious loans were not void are a small minority of cases that disregarded the historical analysis in _Szerdahelyi_ as well as all of the NYS App. Div. Courts decisions since _Brodie_. (_See Addendum to this brief_). This confusion ostensibly is derived from the complicated nature of the body of New York usury law, the courts overall reluctance to find criminal usury, and the less than stellar drafting of the usury statutes themselves by the Legislature.

However, after _Brodie_, **all of the N.Y.S. Appellate Division cases that addressed this issue unanimously held that a loan that violates §190.40, is void _ab initio_ under G.O.L §5-511**. _(See Addendum to this Brief)_.  _Brodie_ specifically referenced _Hufnagel_ that voided a criminally usurious loan due to public policy concerns.  Those public policy concerns were

21

incorporated into the General Obligations Laws at a time when loan-sharking and other evolving

financial crimes were becoming more sophisticated.  For that reason, the legislature intended the

penalties for criminal usurers to be harsh. In *Brodie,* the court noted that the limit to voiding a

usurious loan is on a loan with a principle amount exceeding $2.5 million simply because it

would upset the foundations of basic financial arrangements.  Defendant points out to this court

that there is no legislative difference between what's called "civil" usury and "criminal" usury

when it comes to §5-511 and its avoidance feature. Usury is usury, and the Legislature saw fit to

make two "levels" of usury in response to growing loan-sharking in the state, one that exceeds

16%, and the other that exceeds 25%. The only real differences between the two are simple.

Corporations cannot plead civil usury as a defense (but corporations can plead criminal usury as

a defense – see G.O.L §5-521(3), and that the criminal usury statute has a criminal penal

component above the forfeiture penalty under G.O.L §5-511 (a harsher punishment – jail

time). G.O.L §5-501 caps the maximum amount upon which to assert a claim under §190.40 at

$2,500,000.00. The plain language of §190.40 as read with §5-501 states that anything below

$2.5 million is subject to criminal usury and once found, the Appellate Division Courts in New

York unanimously hold that G.O.L §5-511 voids the transaction.  This is the only and proper and

consistent reading of the usury laws. The results at the NYS Appellate Division level are

consistent with the original intent of the legislature in drafting the usury laws as explained

in *Curtiss* and *Szerdahelyi*.

### POINT VIII
### NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS

It is well settled law that a person coming to court with unclean hands is not afforded

any equitable remedies" *Blue Wolf Capital Fund II, L.P.* 2013 NY Slip Op 1483, (App.

Div.) (held that those found to be charging criminally usurious rate of interest is not entitled

to any form of equitable relief) When it comes to criminal usury, intent to charge a criminally usurious rate is implied based on the loan documents, and as such, implies wrongdoing. This is because the lender intended to lend on a usurious note, and the borrower agreed to accept the terms of the usurious note.  There is no mistake (as the case law requires for equitable relief).  Equitable relief in the form of reformation, unjust enrichment, and any other equitable remedy is not available to Plaintiff. In _Rothstein v. Isolation Film LLC_, 2017 U.S. Dist. LEXIS 59133 (S.D.N.Y. Mar. 22, 2017), the court properly noted that, "_However, where a plaintiff charges a criminally usurious rate, equitable relief is unavailable._"  _At*8_ (held that usurer's claim for unjust enrichment is not applicable since equitable relief is not available to one charging usurious rate) In _Blue Wolf Capital Fund II, L.P.,_ the court also properly dismissed the plaintiff's plea for reformation of the agreement as this would go against the plain language of G.O.L. §5-511.  This court cannot ignore a fundamental rule of law which states, "_The equitable maxim that he who comes into equity must come with clean hands…_" _Don Lia v. Saporito_,909F.Supp. 2d 149, 173 (E.D.N.Y. 2012)  See also _Columbo v. Columbo_, 2008 NY Slip Op 2952, 50 A.D.3d 617, 856 N.Y.S.2d 159 (App. Div.) (held that a party seeking equitable relief must not have unclean hands)  Plaintiff is also attempting to recover based on a theory of equitable relief when its own conduct bars it from asserting such a claim.  See _Balaber-Strauss v. Murphy (In re Murphy)_, 331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005) (held that equitable relief may be denied where party applying for such relief is guilty of conduct involving fraud, unconscionability, or bad faith related to the matter at issue)

Plaintiff's third claim for relief is for unjust enrichment. (See DKT #18, at ¶¶59-62) That since plaintiff has charged a criminally usurious rate of interest on the $35,00.00 loan, plaintiff is not entitled to assert a claim for unjust enrichment. This court must follow the

reasoning in *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 242, 598 N.E.2d 7, 9 (1992) in which the court stated:

"*The consequences to the lender of a usurious transaction can be harsh: the borrower is relieved of all further payment--not only interest but also outstanding principal, and any mortgages securing payment are cancelled. In effect, the borrower can simply keep the borrowed funds and walk away from the agreement. Moreover, the borrower can recover any interest payments made in excess of the legal rate (General Obligations Law § 5-513). New York usury laws historically have been severe in comparison to the majority of states (1960 Report of NY Law Revision Commission, 1960 Legis Doc No. 65, at 77), reflecting the view of our Legislature that the prescribed consequences are necessary to deter the evils of usury.*" *Id.* at \*7

In *Rothstein,* J. Buchwald of this district denied plaintiff's request for reformation noting that the party was never entitled to such relief (*Id.* at \*8). The consequences for a usurer are meant to be harsh and the New York Legislature, in drafting the usury laws, never intended to allow courts to afford equitable relief to the usurious lender.  In *Szerdahelyi v. Harris,* 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986) the court stated, "*…they cannot recover either the money loaned or the interest remaining due in this transaction.*" At \*517.  The plain language of the opinions in *Rothstein* and *Szerdahelyi* demonstrates that the usurious lender is not entitled to any relief, including equitable remedies.  New York is clear on its position regarding usury, and the language in both *Szerdahelyi* and *Seidel* supports that forfeiture is necessary to deter the "evils" of modern day loan-sharking.  Prior decisions such as that in *Carlone v. Lion & The Bull Films, Inc.,* 861 F. Supp. 2d 312 (S.D.N.Y. 2012), have correctly analyzed the history and the intent of the legislature in drafting the usury laws but ruled inconsistently with its own analysis.  None of the cases mentioned in that opinion stated that the effect of the usury laws is to reform the usurious terms of the contract.  The purpose of §5-511 is to **void the entire transaction as well as any collateral agreements**.  If this court were to entertain the idea of reformation following the decision of *Carlone*, then the original intent of the

legislature is of no value as the criminal usurer would face little to no consequences or punishment in a civil case.  Following the decision of _Carlone_ would only invite entities to get away with trying to create usurious transactions since they are not running the risk of forfeiting the original amount loaned.  The legislative intent in New York is clear. The statutes are specifically drafted and enacted to punish the lender that lends at a usurious rate. Any decision allowing any lender that violates the usury laws of New York to be made whole via an equitable remedy would render the legislative intent superfluous.

## **CONCLUSION**

The 150-year history of, and current New York State Usury laws, requires that this court look only at the time the transaction was entered into to determine usury. That this transaction was a loan of money on May 24, 2016 that charged and reserved to the lender, rates of interest exceeding 25% with a definitive and certain repayment without risk to the lender. That at the time of the loan, property with substantial value was reserved to lender which in this case was both an option to convert into public stock of the defendant at a fixed 35% discount and a reservation of shares amounting 400% in value. That such charges embedded in the May 24, 2016 Note proves, as a matter of law, that defendant intended to charge a criminally usurious interest rate. The plaintiff wants to eat its cake and have it too. Plaintiff wants to cleverly disguise various additional charges in the forms of conversion discounts, reservations of shares, and hidden default rates of interest.

25

Based on the foregoing, this court must find that the transaction is *void ab initio* as in violation of the New York's Usury Laws, that the plaintiff has no claim for any equitable relief, and that defendants counsel be awarded attorney's fees and costs in defense of this action.

 Date: January 16, 2018                          Respectfully submitted,

                                                **THE BASILE LAW FIRM, P.C.**
                                                *Attorneys for Defendant*
                                                400 Jericho Turnpike –Ste 104
                                                Jericho, New York 11753
                                                Tel. 516.455.1500
                                                Fax. 631.498.0478
                                                www.TheBasileLawFirm.com
                                                **By:** /s/Mark R. Basile
                                                Mark R. Basile, Esq.  Juris. (MB2201)

26

**ADDENDUM**

| VOID | NOT VOID | UNENFORCEABLE 190.40 |
|---|---|---|
| **21 CASES** | **5 CASES** | **6 CASES** |
| **7 NY Sup. Ct. Cases**<br>**4 Fed. Ct. Cases**<br>**8 NY App. Div. Cases**<br>**1 NY Ct. of Appeals Case** | **1 NY Sup. Ct Case**<br>**4 Fed. Ct. Cases**<br>**0 NY App. Div. Cases**<br>**0 NY Ct. of Appeals Cases** | **2 NY Sup. Ct. Cases**<br>**3 Fed. Dist. Ct. Cases**<br>**1 Second Circuit Case** |
| Bales v. Pfeifer,<br>Sup. Ct. Nassau County- (2005) | Carlone v. Lion & The Bull Films, Inc.<br>S.D.N.Y.- (2012) | Bakis v. Levitin, N.Y.S.2d 676 Sup. Ct. Nassau County – (2004) |
| Hufnagel v. George<br>Fed- S.D.N.Y. (2001) | Koenig v. Slazer Enters<br>Sup. Ct.- Rockland County- (2009) | Am. Equities Group, Inc. v. Ahava Dairy Prods. Corp.<br>S.D.N.Y.- (2004) |
| Szerdahelyi v. Harris<br>NY Ct. of Appeals- (1986) | Cousins v. Pereira (In re Cousins)<br>S.D.N.Y. - (2010) | Hillair Capital Invs., L.P. v. Integrated Freight Corp.,<br>S.D.N.Y. -(2013) |
| Rothstein v. Isolation Film LLC<br>S.D.N.Y. - (2017) | In re Merhi<br>Bankr. E.D.N.Y.- (2014) | Phlo Corp. v. Stevens,  S.D.N.Y.- ( 2001) |
| Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.<br>N.Y.S.2d App. Div.- 1st Dept. (2013) | BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)<br>U.S. Bankr. S.D.N.Y. -(2016) | Brodie v. Schmutz (In re Venture Mort. Fund, L.P.) Fed. Ct.)- 2d Cir. (2002) |
| Bakhash v. Winston<br>N.Y.S.3d App. Div. 1st Dept. (2015) | | Funding Grp., Inc. v. Water Chef, Inc.<br>N.Y.S.2d Sup. Ct. New York County- (2008 |
| In re Rosner,<br>Bankr. E.D.N.Y. (1985) | | |
| Densen v. Ashley<br>Sup. Ct. Suffolk County-(2011) | | |
| Fareri v. Rain's Int'l, Ltd.<br>NYS Sup. Ct. App.<br>Div. 2nd Dept. (1992) | | |

Murlar Equities P'ship v. Jimanez
NYS Sup. Ct. Bronx- (2016)

Selcuk v. Yuran
NYS Sup. Ct. New York County-
(2009)

Manganello v. Park Slope Advanced
Med. PLLC N.Y.S.2d Sup.
Ct. Suffolk County-(2014)

Sasidharan v. Piverger
N.Y.S.2d 646 Sup. Ct. Kings County-
(2014)

Umland v. Nole
N.Y. App. Div. 1st Dept.-(2003)

Thompson v. Mullings
NYS Sup. Ct. Kings County- (2005)

Abir v. Malky, Inc.
N.Y.S.2d App. Div. 2nd Dept. (2009)

Malespin v. AB
N.Y.S.2d Civ. Ct. New York County
(2005)

Russkaya Reklama, Inc. v. Milman
N.Y.S.3d App. Div. 2nd Dept. (2015)

Case Cash Funding, LLC
v. Gilberg, App. Div. 2nd Dept.(2017)

Tripoint Global Equities, L.L.C.
v. Fasolino S.D.N.Y.-(2013)

Venables v. Sagona,
A.D. 3d - App. Div. 2nd Dept. (2011)