**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ADAR BAYS, LLC

                                    Plaintiff,

                    v.

GENESYS ID, Inc.

                                    Defendant.

Civil Action No.: 17-cv-1175(ALC)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

---

**GARSON, SEGAL, STEINMETZ, FLADGATE LLP**
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF UNDISPUTED FACTS ...........................................................................2

ARGUMENT ...........................................................................................................................3

    A.  Standard for Summary Judgment ........................................................................ 3

    B.  Standard for Breach of Contract ......................................................................... 4

    C.  Valid Contracts Between the Parties Exist; Plaintiff Fully Performed; and Defendant Failed to Perform ............................................................................................................ 4

        1.  Defendant Cannot Dispute that it Entered into the SPA and Issued the Note ................ 4

        2.  It is Indisputable that Plaintiff was Damaged from Defendant's Breaches .................... 6

    D.  Plaintiff is Entitled to Recover Costs, Expenses, and Attorneys' Fees ................................. 8

    E.  Defendant's Affirmative Defenses are Unsupportable at Law ............................................ 10

        1.  The Usury Statutes ..................................................................................... 11

        2.  Legal Standard and Relevant Case Law ...................................................... 12

CONCLUSION .........................................................................................................................16

# TABLE OF AUTHORITIES

Cases                                                                                                   Page(s)

Baisch v. Gallina,
346 F.3d 366, 371-72 (2d Cir. 2003) ............................................................ 3

Beaufort Capital Partners, LLC v. Oxysure Sys.,
2017 U.S. Dist. LEXIS 32335 *8 (S.D.N.Y. 2017)...................................13, 14

Blue Wolf Capital Fund II v. American Stevedoring, Inc.,
105 A.D.3d 178, 183 (1st Dep't 2013) ....................................................12, 15, 16

Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., LP,
636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009 ....................................................... 8

Coppola v. Bear Stearns & Co.,
499 F.3d 144, 148 (2d Cir. 1986)......................................................................3

Cubby, Inc. v. Compuserve, Inc.,
776 F. Supp. 135, 139 (S.D.N.Y. 1991) ...........................................................3

Diamond D Enters. USA, Inc. v. Steinsvaag,
979 F.2d 14, 19 (2d Cir. 1992)..............................................................3, 9, 10

F.H. Krear & Co. v. Nineteen Named Trustees,
810 F.2d 1250, 1263 (2d Cir. 1987)..................................................................9

Henry-Lee v. City of New York,
746 F. Supp. 2d 546, 560 (S.D.N.Y. 2010) ......................................................3

Hillair Capital Invs., L.P. v. Integrated Freight Corp.,
963 F. Supp. 2d 336 (S.D.N.Y. 2013) .............................................................15

Hooper Assocs., Ltd. v. AGS Computs., Inc.,
549 N.Y.S.2d 365, 367 (1989).........................................................................9

Kern v. Cambridge Holdings, LLC,
2000 U.S. Dist. LEXIS 13211 *6 (S.D.N.Y. 2001)........................................4

Kobrand Corp. v. Abadia Reuerta S.A.,
2012 U.S. Dist. LEXIS 165025 *12 (S.D.N.Y. 2012)....................................4

LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.,
2015 Misc. LEXIS 4294 (N.Y. Sup., Kings Co.) ....................................12, 13, 14, 15

LG Capital Funding, LLC v. Volt Solar Sys.,
2016 U.S. Dist. LEXIS 108779, at *25 (E.D.N.Y. Aug. 15, 2016)...............................................8

Loria v. Groman,
306 F.3d 1271, 1282-83 (2d Cir. 2002) .....................................................................................3

Major League Baseball Props., Inc. v. Salvino, Inc.,
542 F.3d 290, 309 (2d Cir. 2008)...............................................................................................3

Mallis v. Bankers Trust Co.,
615 F.2d 68, 77 (2d Cir. 1980)..................................................................................................12

Mount Vernon City School Dist. v. Nova Cas. Co.,
945 N.Y.S.2d 202 (2012) ............................................................................................................8

Oscar Gruss & Son, Inc. v. Hollander,
337 F.3d 186, 199 (2d Cir. 2003)...............................................................................................9

Roswell Capital Partners LLC v. Alternative Constr. Techs.,
2009 U.S. Dist. LEXIS 7690 *46 (S.D.N.Y. 2009)............................................................11, 12

Sabella v. Scantek Med., Inc.,
2009 U.S. Dist. 2009 *45 (S.D.N.Y. 2009) .........................................................................12, 15

Sandrino v. Michaelson Assocs., LLC,
2012 U.S. Dist. LEXIS 165143 at 18 (S.D.N.Y. 2012) ...............................................................4

Union Capital Funding, LLC, v. Vape Holdings, Inc.,
2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017) ............................................................7, 12, 13

## STATUTES, RULES, REGULATIONS & TEXTS

Page(s)

Fed. R. Civ. P. 56..........................................................................................................................1, 2
L.R. 56.1 ...........................................................................................................................2, 4, 5, 6, 9, 10
N.Y. G.O.L. § 5-501 ...................................................................................................................11, 12
N.Y. G.O.L. § 5-511 ...................................................................................................................11, 12
N.Y. G.O.L. § 5-512...................................................................................................................11, 12
N.Y. Penal Law § 190.40.............................................................................................................11, 12

Plaintiff, Adar Bays, LLC ("Plaintiff" or "Adar"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## I.   PRELIMINARY STATEMENT

This action is based on numerous breaches of a Securities Purchase Agreement (the "SPA") and an 8% Convertible Redeemable Note (the "Note") in the amount of $35,000.00 between Adar and Defendant, GeneSYS ID, Inc. ("Defendant" or "GNID"), which allowed Plaintiff to convert portions of the Note into equity of Defendant, a publicly traded corporation.

Defendant will not dispute the existence of the SPA or the Note. Nor could it, as both are acknowledged and referenced throughout the Defendant's public financial statements. It will not dispute that Defendant's obligations to repay the Note or to deliver shares related to Plaintiff's rights therein were not met. Indeed, Defendant admits that it deliberately failed to honor the Note, purportedly to bring "all parties to the table to discuss a satisfactory settlement," according to Defendant's public filings.

Instead, Defendant will present,[1] under the guise of disputed issues of fact, the legal defense of criminal usury. Defendant will intentionally conflate the civil and criminal usury statutes to suit its argument. It will cherry pick favorable quotes from inapposite case law. And it will ask that the Court find that the Note is void *ab initio*, while ignoring or attempting to distinguish on-point, persuasive case law from this Court and the New York State Court, which have analyzed identical documents and identical usury arguments and all reached the conclusion that the notes are not usurious.

---

[1] In the matter of *Adar Bays, LLC v. Aim Exploration, Inc.* 17-cv-1290(VM), this firm represents the same Plaintiff as herein and Defendant's counsel, Mr. Mark Basile, Esq. represents the defendant. In that matter, defendant presented the defense of criminal usury in the form of a motion to dismiss Dkts. 27-31. It is this, and other matters between this firm and Mr. Basile's firm, that present the basis for Plaintiff's anticipatory arguments.

For the following reasons, it is respectfully requested that the Court grant Plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56 in its entirety.

## II.   STATEMENT OF UNDISPUTED FACTS

For a full recitation of undisputed facts, the Court is respectfully referred to Adar Bays, LLC's Local Rule 56.1 Statement of Undisputed Material Facts filed herewith ("Pl. LR 56.1"), and the Declaration of Aryeh Goldstein in Support of Plaintiff's Motion for Summary Judgment filed herewith.   However, for the convenience of the Court, several pertinent and undisputed facts are listed below:

- On May 24, 2016, Defendant, then known as RX Safes, Inc., entered into a Securities Purchase Agreement ("SPA") with Adar, which provided for, *inter alia*, the purchase and issuance of a $35,000.00 8% Convertible Redeemable Note.

- The SPA is signed by Ms. Lorraine Yarde, the Chief Executive Officer of Defendant.

- On May 24, 2016, Defendant issued a $35,000.00 8% Convertible Redeemable Note to Plaintiff.

- The Note is signed by Ms. Yarde.

- Adar funded the Note for $33,000.00 to Defendant, and $2,000.00 to New Venture Attorneys, P.C.

- On November 28, 2016, Adar submitted a Notice of Conversion, seeking to convert $5,000.00 of principal of the Note into 439,560 shares of Defendant's common stock.

- Defendant did not deliver the shares.

- Defendant's Quarterly Statement for the period ended September 30, 2016 (the "10-Q"), signed by Ms. Yarde, acknowledges the Note and a number of its pertinent terms, including the conversion right, interest rate, and maturity date.

- Defendant's Quarterly Statement for the period ended September 30, 2016, states "the Company terminated its transfer agent on September 6, 2016, preventing further toxic conversions and bringing all parties to the table to discuss a satisfactory settlement . . . ."

2

### III.   ARGUMENT

#### A.   Standard for Summary Judgment

"Summary Judgment is appropriate when the pleadings and admissible evidence proffered to the district court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F3d 290, 309 (2d Cir. 2008). "Material Facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party.'" *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 1986). "Factual disputes that are irrelevant or unnecessary cannot defeat a motion for summary judgment." *Loria v. Groman*, 306 F.3d 1271, 1282-83 (2d Cir. 2002).

"In deciding a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 560 (S.D.N.Y. 2010). "[T]he moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Baisch v. Gallina*, 346 F.3d 366, 371-72 (2d Cir. 2003). "The non-moving party cannot, however, 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture.'" *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 560 (S.D.N.Y. 2010). There must be more than "some metaphysical doubt as to the material facts." *Cubby, Inc. v. Compuserve, Inc.*, 776 F. Supp. 135, 139 (S.D.N.Y. 1991).

B.      Standard for Breach of Contract

Under New York Law, an action for breach of contract requires proof of (i) a contract; (ii) performance of the contract by one party; (iii) breach by the other party; and (iv) damages. *Kern v. Cambridge Holdings, LLC*, 2000 U.S. Dist. LEXIS 13211 *6 (S.D.N.Y. 2001).  "The construction of an unambiguous contract is appropriate for resolution on summary judgment." *Sandrino v. Michaelson Assocs.*, *LLC*, 2012 U.S. Dist. LEXIS 165143 at 18 (S.D.N.Y. 2012).

"[T]o grant summary judgment on a breach of contract claim, the Court should determine the following: (1) there are no genuine issues of material fact that a party engaged or failed to engage in certain conduct, and (2) such acts or omissions unambiguously breach the terms of the contract."  *Kobrand Corp. v. Abadia Reuerta S.A.*, 2012 U.S. Dist. LEXIS 165025 *12 (S.D.N.Y. 2012).

C.      Valid Contracts Between the Parties Exist; Plaintiff Fully Performed; and Defendant Failed to Perform

1.  Defendant Cannot Dispute that it Entered into the SPA and Issued the Note.

On May 24, 2016, Adar and Defendant, then known as RX Safes, Inc. entered in a Securities Purchase Agreement which provided for, *inter alia*, the purchase and issuance of a $35,000.00 8% Convertible Redeemable Note.  L.R. 56.1, ¶¶ 6-7.  Defendant's CEO, Lorraine Yarde, signed the SPA.  L.R. 56.1 ¶ 8.  Defendant cannot dispute that it entered into the SPA.

Pursuant to the terms of the SPA, on May 24, 2016, Defendant issued a $35,000.00 8% Convertible Redeemable Note to Plaintiff.  L.R. 56.1 ¶ 9.  Ms. Yarde signed the Note.  L.R. 56.1 ¶ 10.  Further, Defendant's Quarterly Statement for the period ended September 30, 2016 (the "10-Q") states that "On May 24, 2016, the Company entered into an agreement with Adar Bays, LLC to invest into the Company $35,000.00 in exchange for a convertible promissory note.  The

note bears interest at the rate of 8%.  All outstanding principal and interest is due and payable on May 24, 2017." L.R. 56.1 ¶ 13.  The 10-Q is signed by Ms. Yarde.  L.R. 56.1 ¶ 14.  Defendant cannot dispute that it issued the Note to Plaintiff.

On May 24, 2016, Defendant issued a Disbursement Memorandum directing Adar to disburse $2,000.00 to New Venture Attorneys, P.C. and $33,000.00 to Defendant in conjunction with the funding of the Note.  L.R. 56.1 ¶¶ 15-17.  The Disbursement Memorandum is signed by Ms. Yarde and contained Defendant's banking information.  L.R. 56.1 ¶¶18-19.   Defendant cannot dispute that it issued the Disbursement Memorandum.

On May 26, 2016, Adar wired the funds per the instructions of the Disbursement Memorandum.  L.R. 56.1 ¶ 20.  Defendant accepted the funds.  L.R. 56.1 ¶ 21.  Defendant cannot dispute that Plaintiff performed under the terms of the SPA, Note, and Disbursement Memorandum.

Section 4(a) of the Note provides that Plaintiff "is entitled, at its option . . . to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock . . . ." L.R. 56.1 ¶ 23.  The Section then defines the conversion price as "65% of the **lowest trading price** . . . for the *twenty* prior trading days including the day upon which a Notice of Conversion is submitted."  L.R. 56.1 ¶ 24.  Finally, the Note states that the "conversion shall be effectuated by the Company delivering the shares of Common Stock to the holder within 3 business days of receipt of the Notice of Conversion."  L.R. 56.1 ¶ 27.  Defendant acknowledged the same in the 10-Q, stating, "The note is convertible by Adar Bays into shares of the Company's common stock at any time after 180 days from note issuance (November 20, 2016.  The conversion price for each share is equal to 65% multiplied by the lowest trading price of the Common Stock on the OTC Market for the 20 prior trading days."

L.R. 56.1 ¶ 28.  Again, this 10-Q was signed by Ms. Yarde.  Defendant cannot dispute that the parties intended to include this conversion right in the Note.

On November 28, 2016, Adar submitted a Notice of Conversion, along with the necessary supporting documents to Defendant and its transfer agent via electronic mail.  L.R. 56.1 ¶ 36.  On November 29, Ms. Yarde acknowledged receipt of the Notice of Conversion, but stated that Defendant would not be honoring it.  L.R. 56.1 ¶ 39.  Further, the 10-Q shows that this was by design, in an attempt to leverage a favorable settlement of its outstanding debts.  The 10-Q states that "the Company terminated its transfer agent on September 6, 2016, preventing further toxic conversions and bringing all parties to the table to discuss a satisfactory settlement . . . ."  L.R. 56.1 ¶ 41.  The shares were never delivered, placing Defendant in breach of the Note as of December 2, 2016, which is the fourth business day after receipt of the notice of conversion.  Defendant cannot dispute that it failed to honor the notice of conversion, thus breaching the terms of the Note.

> 2.  It is Indisputable that Plaintiff was Damaged from Defendant's Breaches.

It is equally indisputable that Plaintiff incurred significant damages as a result of Defendant's breaches.  Had Defendant honored the conversion, Plaintiff would have been free to sell the shares on the open market at a profit, relieving Defendant of its obligation to repay the $5,000.00 converted.  Plaintiff would have then sought to convert further portions of the Note if the market remained favorable, but was prevented from doing so due to Defendant's breach.

Due to the uncertainties surrounding the timing of conversions, market price, trading volume, and conversion amounts, precise damages were exceedingly difficult to calculate at the

time of contracting.  Nonetheless, the parties agreed in the Note to two alternative remedies for a breach by Defendant for failure to deliver shares.

First, the parties agreed that liquidated damages would accrue at a rate of $250.00 per day for the first 6 days of breach, then $500.00 per day until the shares were delivered.  To date, the liquidated damages have accrued to $204,000.00.

Second, and alternatively, Plaintiff could have elected to enforce the "Make-Whole for Failure to Deliver Loss" provision, which equaled the highest trade price at any time on or after the date of conversion multiplied by the number of shares converted.  Though Plaintiff did not elect this measure of damages, had it done so, Plaintiff would be entitled to $56,043.90 in damages from its $5,000.00 conversion.[2]  In addition to these damages, Plaintiff would also be entitled to repayment of the remaining $30,000.00 of principal, as well regular and default accrued thereupon.  To date of this filing, this sum would amount to $39,690.47.[3]

Additionally, pursuant to a recent decision in this Court in the matter of *Union Capital Funding, LLC, v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017), 16-cv-1343(RJS) where the Hon. Richard J. Sullivan analyzed an identical breach of a nearly identical note, the Court determined that damages are "ascertainable through expectation damages, calculated by subtracting the contract price – the price at which [Plaintiff] is entitled to convert shares under the Note – from the market price of shares on the date of breach." *Union*, at 16.  As for damages related to breaches related to the balance of the note, Judge Sullivan stated that "the Court would take the date of the breach and determine the conversion price [Plaintiff] was entitled to on that date, the number of shares [it] was authorized to convert, and the market price

---

[2] High trade price of $.1275 (on August 3, 2017) x 439,560 = $56,043.9
[3] Regular interest from May 27, 2016 (commencement date) to December 1, 2016 = $30,000 x [(164/365) x .08)] = $1,262.46.  Default interest from December 2, 2017 (date of default) to date of filing = $31,262.46 x [(410/365) x .24] = $8,428.01.

on the date of the breach." *Id.*  Applying this calculation to the present facts shows that Plaintiff has clearly been damaged.  With regard to the November 28, 2017 conversion, Plaintiff's damages are $8,186.80,[4] as well as repayment of $5,000.00.[5]  With regard to the remaining balance, pursuant to Judge Sullivan's calculation, Plaintiff's expectation damages are $49,120.87, in addition to repayment of the $30,000.00 balance of the Note.[6]  Accordingly, applying this calculation of damages, Plaintiff is entitled to a total of $92,307.67.

Therefore, not only is it indisputable that Plaintiff was damaged by Defendant's breach, no questions of fact remain as to amount of damages because each measure can be determined by the Court from the face of the Note and the publicly available price history of Defendant's stock.

D. <u>Plaintiff is Entitled to Recover Costs, Expenses, and Attorneys' Fees.</u>

Under New York law, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action on the contract is enforceable if the contractual language is sufficiently clear." *LG Capital Funding, LLC v. Volt Solar Sys.*, 2016 U.S. Dist. LEXIS 108779, at *25 (E.D.N.Y. Aug. 15, 2016)(quoting *Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs.*, LP, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009); *see also Mount Vernon City School Dist. v. Nova Cas. Co.*, 945 N.Y.S.2d 202 (2012)).  "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."

---

[4] Price on the date of breach ($.03) − Conversion price ($.011375) = Expectation damage per share ($.018625). Number of shares pursuant to the Conversion (439,560) x Expectation price ($.018625) = $8,186.80.

[5] Because the expectation damages calculation outlined by Judge Sullivan subtracts the contract price from the market price, expectation damages represent only the profits Plaintiff would have earned if it sold the stock, not the entire value of the conversion.  In other words, if the calculation multiplied the market price by the total shares ($.03 x 439,560 = $13,186.08), rather than the difference between the market price and contract price by the total shares ([$.03-$.011375] x 439,560 = $8,186.80), the entire conversion value would be accounted for.  The difference of $5,000.00 between these figures, or $.018625 per share, represent Plaintiff's cost of the asset acquired, which would have also been recouped upon sale.

[6] Balance of the Note ($30,000.00)/Conversion Price ($.011375) = Shares to which Plaintiff would have been entitled (2,637,362). Number of shares (2,637,362) x Expectation Price ($.018625) = $49,120.87.

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). "[W]hen a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992)(quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

Furthermore, the Court should award Plaintiff attorneys' fees as damages for a breach of contract if the parties' "intention to do so is unmistakably clear" from the contractual language. *Hollander*, 337 F.3d at 199 (2d Cir. 2003)(quoting *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 549 N.Y.S.2d 365, 367 (1989)).

Here, the Note authorizes the award of attorneys' fees, and the parties' "intention to do so is unmistakably clear." Section 7 of the Note states, "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note." L.R. 56.1 ¶ 80. Defendant cannot dispute that it agreed to pay attorneys' fees under the terms of the Note. Because Defendant is liable to Plaintiff for breach of contract, Defendant must not be exonerated from its obligation to reimburse Plaintiff the attorneys' fees, expenses and costs incurred in pursuing what is rightfully entitled to Plaintiff under the Note. Plaintiff would not have incurred attorneys' fees and expenses had the Defendant honored its obligations in the first place. Thus, the Court should award the attorneys' fees, expenses, and costs to the Plaintiff as damages for Defendant's breach of contract.

Furthermore, if Plaintiff is the prevailing party, it is entitled to recover attorneys' fees, costs and expenses incurred in bringing this action. Section 8 of the Note states, "if the Holder

9

prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding." L.R. 56.1 ¶ 81. When the contractual language to award attorneys' fees to a prevailing party is clear, the Court should order Defendant to pay "whatever amounts have been expended by the prevailing party" as the clear contractual language in the Note dictates. *Diamond D Enters. USA, Inc.*, 979 F.2d at 19 (2d Cir. 1992).

Here, the contractual language of the Note allowing the award of attorneys' fees to the prevailing party is clear and undisputed. As Plaintiff has established by undisputed material facts that Defendant is liable to Plaintiff for breach of contact. As the prevailing party, Plaintiff is entitled to recovery of attorneys' fees, costs and expenses incurred in bringing this action pursuant to the clear terms of the Note.

    E.  <u>Defendant's Affirmative Defenses are Unsupportable at Law.</u>

As indicated in the preliminary statement herein, based on previous matters between Plaintiff and opposing counsel, Plaintiff anticipates that Defendant will present, under the guise of disputed issues of fact, the legal defense of criminal usury. Defendant will intentionally conflate the civil and criminal usury statutes to suit its argument. It will cherry pick favorable quotes from inapposite case law. And it will ask that the Court find that the Note is void *ab initio*, all the while ignoring or attempting to distinguish on-point, persuasive case law from this Court and the New York State Court, which analyzed identical documents and identical usury arguments and all reached the conclusion that the notes are not usurious.

Looking past Defendant's feigned victimization narrative reveals a corporation that intentionally breached its agreements in an effort to leverage a favorable settlement of its outstanding debts, as admitted to in the 10-Q. Now, with its underhanded plan having failed, it

10

seeks a complete windfall relating to this convertible note, and whatever balance remains of the nearly $600,000.00 of convertible debt that Defendant had on its books as of September 30, 2016.

1.   The Usury Statutes.

There are two types of usury defenses – civil usury and criminal usury.  The distinction between the two is important, and Defendant will undoubtedly seek to blur the line between them to suit its argument.

§5-501 of the New York General Obligations Law, the civil usury statute, provides that "no person . . . shall . . . charge, take or receive any money . . . as interest on the loan of any money . . . at a rate exceeding [16% per annum]."

§190.40 of the New York Penal Law, the criminal usury statute, provides that "[a] person is guilty of criminal usury in the second degree when . . . he knowingly charges, takes or receives any money . . . as interest on the loan . . . of any money . . . , at a rate exceeding [25% per annum]."

§5-511 of the New York General Obligations Law provides that contracts prescribed in §5-501, the *civil* usury statute, shall be void, "but there is no specific statutory authority for voiding a loan that violates the criminal usury statute" *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 *46 (S.D.N.Y. 2009).  Finally, §5-521 of the New York General Obligations Law provides that a corporation may not assert the defense of civil usury, but that it may assert a defense of criminal usury.

Granted, many Courts have analyzed criminal and civil usury under similar framework, it is nonetheless important to be mindful of which defense Defendant, a corporation, can avail itself

of—criminal usury pursuant to N.Y. Pen. L. §190.40 vis-à-vis N.Y. G.O.L. §5-521, and not civil usury pursuant to N.Y. G.O.L. §§5-511 and 5-501.

2.   Legal Standard and Relevant Case Law.

"Usury is an affirmative defense, and a heavy burden rests upon the party seeking to impeach a transaction based upon usury." *Union Capital LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445 *10-11 (S.D.N.Y. 2017).   "Defendant [must] establish usury by clear and convincing evidence." *Sabella v. Scantek Med., Inc.*, 2009 U.S. Dist. 2009 *45 (S.D.N.Y. 2009). "Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *Id*.   "For a loan to be criminally usurious under that section, the alleged usurer must 'knowingly' charge interest in excess of the legal rate." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980).   "If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law." *Blue Wolf Capital Fund II v. American Stevedoring, Inc.*, 105 A.D.3d 178, 183 (1st Dep't 2013).   There is a strong presumption against the finding of usurious intent when the loan is not usurious on its face.   See, *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980); *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 (S.D.N.Y. 2009); *LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 Misc. LEXIS 4294 (N.Y. Sup., Kings Co.).

Defendant will seek to align the facts herein to numerous off-point cases to support its contentions that elements of Plaintiff's conversion right should constitute interest for the purposes of a usury determination.   However, each case is easily distinguishable and none warrants consideration over the various matters that analyzed nearly identical rights in convertible debt instruments, namely, *Union Capital, LLC v. Vape Holdings, Inc.*, 2017 U.S.

12

Dist. LEXIS 60445 *12 (S.D.N.Y. 2017), *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 2017

U.S. Dist. LEXIS 32335 *8 (S.D.N.Y. 2017), and *LG Capital Funding, LLC v. Sanomedics Intl.*

*Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294 *29-30. (N.Y. Sup. Ct., Kings Co. 2015).

Beginning with *Union Capital LLC v. Vape Holdings, Inc.*, 16-cv-1343 (RJS), 2017 U.S.

Dist. LEXIS 60445 (S.D.N.Y. 2017), the Hon. Richard J. Sullivan analyzed Vape's usury

defense in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The note at

issue in *Union* (the "Union Note") is nearly identical to the Note herein.  The Union Note and the

Note both provide for a principal amount due one year from issuance, 8% interest thereupon,

24% interest in the event of default, and a conversion right.  The Union Note stated that "[t]he

Holder of this Note is entitled, at any time, to convert all or any amount of the principal face

amount of this Note then outstanding into shares of the Company's common stock . . . at a price .

. . for each share equal to 58% of the **lowest trading price** of the Common Stock . . .  for the

thirteen prior trading days . . . ." *Union Capital LLC*, 16-cv-1343 (RJS), Dkt. 1-1.  Therefore, the

only differences between the notes are the discount and the number of days in "look-back"

provision.  With regard to this provision, Judge Sullivan stated:

> Vape argues that, in considering the effective interest rate, the Court should also
> include the potential profit Union might reap by converting shares at a 42%
> discount.  The Court disagrees.  Union simply held an option to convert shares,
> and it could have elected to obtain repayment in cash, which would clearly not
> have been usurious.  Moreover, even if Union chose to convert the loan principal
> into shares, any potential profit Union might realize would still be dependent on
> the market price at the time of conversion and so, therefore, would be too
> uncertain to incorporate into an interest rate calculation.  Furthermore, even if the
> discount rate could be considered, a usury defense could no longer be applied
> against the loan once the Note principal was converted into equity in Vape.
> Accordingly, Vape cannot meet its heavy burden in impeaching the transaction
> for usury.  *Union Capital LLC v. Vape Holdings, Inc.*, 16-cv-1343 (RJS), 2017
> U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017) (internal citations omitted).

Similar analysis was applied by this Court in *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 16-cv-5176(JPO), 2017 U.S. Dist. LEXIS 32335 (S.D.N.Y. 2017).   The notes at issue in *Beaufort* provided that "'at any time after the Maturity Date . . . this Note, including interest and principal, shall be convertible into shares at the higher of (a) $.0004; or (b) the amount that is a 30% discount' from the average closing price."   *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 16-cv-5176(JPO), 2017 U.S. Dist. LEXIS 32335 *6 (S.D.N.Y. 2017).   Like Defendant, "Oxysure argue(d) . . . that a 30% discount in the equity conversion effectively increases the interest rate on the notes to a level that is usurious."   *Id*. at 6-7.   The Hon. J. Paul Oetken first found that because the conversion right only applied after an event of default, the usury defense could not apply.   Judge Oetken continued:

> Even focusing on the post-maturity interest rate . . . , the usury defense would likely nonetheless fail because it relies on the debt-to-equity conversion feature of the notes.   The conversion feature allowed Beaufort to redeem the Notes for equity at a discounted price after the maturity date.   However, though the initial transaction took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense.   Thus Oxysure's reliance on the discounted equity conversion in calculating the applicable interest rate for its usury defense is misplaced. *Id.*

Finally, the New York Supreme Court has made the same determination in *LG Capital Funding, LLC v. Sanomedics Int'l. Holdings, Inc.*, 2015 N.Y. Misc. 4294 (Sup. Ct. 2015). Plaintiff brought an action against a corporation based upon similar convertible notes.   The *Sanomedics* notes provided for a conversion price equal to 55% of the average of the lowest three trading prices for the ten prior trading days.   Again, the discount and the "look-back" are only marginally different from the Note's conversion provision herein.   Defendant argued that the notes were usurious and unenforceable based on this conversion provision.   The court first found that the notes were not usurious on their faces because they provided for 8% and 10% per annum interest rates.   *Id*. at 29.   Next, the court stated:

14

It is further noted that 'usury laws apply only to loans or forbearances, not investments. Although the initial transactions were loans, which were clearly note usurious, as plaintiff notes, the Securities Purchases Agreement provided that, upon conversion, [Defendant] was selling securities . . . to it as an 'investor.' The conversion to stock would convert plaintiff from a lender to an investor with the right to share in the profits and losses of [Defendant] . . . . While a loan may not be disguised as an investment as a cover for usury . . . upon conversion at Plaintiff's election [Defendant's] debt to plaintiff [would] become an investment, upon which plaintiff took the risk that the stock could become completely worthless. Where the transaction provides for the purchase of shares of stock and the price of stock fluctuates so that it is unclear if the interest rate would exceed the legal rate of interest, no usury exits. *Id.* at 29-30.

Defendant will seek to distinguish these matters, or disregard them altogether, in favor of numerous inapposite cases, placing emphasis on cases such as *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013); *Sabella v. Scantek Med. Inc.*, 2009 U.S. Dist. 88170 (S.D.N.Y. 2009); or *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 2013 N.Y. Slip Op. 1483 (1st Dep't, 2013); however, none of these decisions impact this matter. First, in *Hillair* and *Scantek*, this Court determined that common stock issued to a lender in addition to a promise of repayment could be considered in a calculation of interest. These matters, however, are fundamentally different than the present matter. The common stock herein is only delivered *in lieu* of repayment—once the shares are delivered, Defendant is no longer obligated to repay that portion of the Note. Whereas in *Hillair* and *Scantek*, the debtor was obligated to repay the loan and was required to deliver shares *in addition to* repayment. Next, in *Blue Wolf Capital Fund*, the court analyzed a loan agreement with a principal amount of $1,130,000.00 and a stated interest rate of 12% per annum, that also charged the debtor with a $50,000.00 "commitment fee," a $75,000.00 deposit against creditor's costs and expenses, and a $200,000.00 "deposit against future commitment fees." The court found that "the $200,000.00 deposit 'against future commitment fees' constitute[d] additional interest within the meaning of the statute" because Blue Wolf could retain the deposit "in its sole discretion." *Id.* at *183.

15

Again, this is markedly different than the facts herein.  The *Blue Wolf* lender withheld 28.7% of the face value of the instrument and the debtor would be required to repay the face value, along with an additional 12% interest.  Thus, the Court should not favor Defendant's numerous logical leaps, and should apply the same analysis that this Court has previously applied to nearly identical facts.

### IV.   CONCLUSION

Because there are no disputed questions of fact as to Defendant's breach or Plaintiff's damages, and because Defendant's defense of criminal usury is unsupportable at law, Adar respectfully requests that the Court grant Plaintiff's motion for summary judgment for damages on the First, Second, Fourth, and Fifth Claims for Relief.

DATED:  January 16, 2018
        New York, New York

Respectfully Submitted,

GARSON, SEGAL,
STEINMETZ, FLADGATE LLP
*Attorneys for Plaintiff*

By:      /s/
         Kevin Kehrli (KK1536)
         164 West 25th Street
         Suite 11R
         New York, NY 10001
         **Telephone:** (212) 380-3623
         **Facsimile:** (347) 537-4540
         **Email:** KK@GS2Law.com

16