UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAR BAYS, LLC

                              Plaintiff,          **Civil Action No.:** 17-cv-1175(ALC)

              v.

GENESYS ID, INC.

                              Defendant.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(C).

---

GARSON, SÉGAL, STEINMETZ, FLADGATE LLP
Kevin Kehrli
164 West 25th Street
Suite 11R
New York, NY 10001
(P): (212) 380 – 3623
(F): (347) 537 – 4540
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF RELEVANT FACTS ......................................................................1

III.  LEGAL STANDARD ....................................................................................................3

IV.   ARGUMENT ..................................................................................................................8

    A.  The Discounted Price to Acquire Stock is Not Interest ........................................8

        i.   Defendant Willfully Disregards Numerous Cases for this Court Which
            Address the Issue Head On ....................................................................................8

        ii.  Defendant Willfully Disregards the Aforementioned, On-Point Cases in
            Favor of Inapposite and Foreign Case Law .............................................12

    B.  The Share Reserve is Not Interest........................................................................15

    C.  The Post-Default Interest Rate is Irrelevant to the Usury Determination...........18

        i.   *Madden*'s Holding Does Not Apply to this Matter, and Charges Following
            A Default Are Not Included in A Usury Determination...........................18

        ii.  Liquidated Damages Are Not Interest .......................................................20

    D.  Defendant Cannot Prove the Intent Necessary for a Finding of Usury .............23

    E.  Even if the Court were to Find Provisions of the Note Usurious, the Loan
        Would Be Adjusted, Rather than Voided ........................................................24

V.    CONCLUSION ............................................................................................................25

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Adar Bays, LLC v. Aim Exploration, Inc.*,
2018 U.S. Dist. LEXIS 9943 (S.D.N.Y. 2018)............................................ 7, 10, 11, 12, 13, 16, 17, 21

*AWG Leasing Tr. v. United States*,
592 F. Supp. 2d 953 (N.D. Ohio 2008)........................................................................ 14, 15

*Beaufort Capital Partners, LLC v. Oxysure Sys.*,
2017 U.S. Dist. LEXIS 32335 (S.D.N.Y. 2017)................................................................ 6, 10, 11, 12

*BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*,
2016 Bankr. LEXIS 4113, at *125 (S.D.N.Y. 2016) ........................................................ 6, 7, 23, 25

*Blue Wolf Capital Fund II v. American Stevedoring, Inc.*,
105 A.D.3d 178 (1st Dep't 2013) ................................................................................ 5, 14, 15, 17

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*,
310 F. Supp. 2d 556 (S.D.N.Y. 2003) ........................................................................ 19, 20

*Custom Chrome, Inc. v. Commissioner*,
217 F.3d 1117 (9th Cir. 2000) .................................................................................... 14, 15

*Funding Group, Inc. v. Water Chef, Inc.*,
19 Misc. 3d 483 (N.Y. Sup. 2008)................................................................................ 6, 24

*Hillair Capital Invs., L.P. v. Integrated Freight Corp.*,
963 F. Supp. 2d 336 (S.D.N.Y. 2013) ........................................................................ 12

*Koenig v. Slazer Enters.*,
27 Misc. 3d 1212(A) (Sup. Ct. N.Y. 2010)...................................................................... 24

*Llewellin v. Asset Acceptance, LLC*,
2015 U.S. Dist. LEXIS 145437 (S.D.N.Y. 2015)............................................................ 19

*LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*,
2015 Misc. LEXIS 4294 (N.Y. Sup., Kings Co. 2015) .................................................... 5, 6, 11, 12

*Madden v. Midland*,
2017 U.S. Dist. LEXIS 27109 (S.D.N.Y. 2017)............................................................ 6, 18, 19, 20

*Mallis v. Bankers Trust Co.*,
615 F.2d 68 (2d Cir. 1980)............................................................................................ 5

*Peltz v. Welsh, Carson, Anderson & Stow VII, L.P. (In re Bridge Info. Sys.)*,

311 B.R. 781 (Bankr. E.D. Mo. 2004) ................................................................................ 13

*Phlo Corp. v. Stevens*,

2001 U.S. Dist. LEXIS 17490 (S.D.N.Y. 2001) ......................................... 13, 14, 15, 17, 21

*Prof. Merch. Advance Capital, LLC v. C Care Servs., LLC*,

U.S. Dist. LEXIS 92035 (S.D.N.Y. 2015) ......................................................................... 24

*Prowley v. Hemar Ins. Corp. of Am.*,

2010 U.S. Dist. LEXIS 45249 (S.D.N.Y. 2010) ................................................................ 19

*Roswell Capital Partners LLC v. Alternative Constr. Techs.*,

2009 U.S. Dist. LEXIS 7690 (S.D.N.Y. 2009) ....................................................... 4, 5, 6, 24

*Sabella v. Scantek Med., Inc.*,

2009 U.S. Dist. 2009 (S.D.N.Y. 2009) ..................................................................... 4, 12, 13

*Star Funding, Inc. v. Vault Minerals, LLC*,

2017 U.S. Dist. LEXIS 128336 (S.D.N.Y. 2017) ........................................................... 7, 24

*Union Capital Funding, LLC, v. Vape Holdings, Inc.*,

2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017) ................................. 4, 5, 9, 11, 12, 13, 20, 21, 22, 23

## S<small>TATUTES</small>, R<small>ULES</small>, R<small>EGULATIONS</small> & T<small>EXTS</small>

Page(s)

Fed. R. Civ. P. 12(c) ............................................................................................... 3, 7, 10

N.Y. G.O.L. § 5-501 ....................................................................... 4, 8, 17, 20, 21, 22

N.Y. G.O.L. § 5-511 ................................................................. 4, 8, 16, 17, 20, 21, 22

N.Y. G.O.L. § 5-521 ............................................................................................... 4, 8

N.Y. Penal Law § 190.40 ................................................................................. 4, 6, 8, 17

## I.   INTRODUCTION

Plaintiff, Adar Bays, LLC ("Plaintiff" or "Adar"), by and through the undersigned counsel, respectfully submits this Opposition to Defendant, Genesys ID, Inc.'s Motion to Dismiss.

Defendant begins with a "brief history" of usury, beginning with the "founding of this nation," in an effort to depict Defendant, a sophisticated, publicly traded entity, as a victim of loan-sharking and criminal usury.[1]   The Court should see through Defendant's rhetoric.   What Defendant is actually seeking is a windfall, such that a publicly traded entity that negotiated and issued a note under the guidance of sophisticated parties, including Defendant's counsel, can walk away from its obligations entirely without recourse. Defendant's position inequitable, illogical and unsupported at law.   Defendant relies on inapposite and foreign case law through tenuous analogies, while ignoring on-point persuasive law of this Court.   For the following reasons, Defendant's motion should be denied in its entirety.

## II.   STATEMENT OF RELEVANT FACTS

The facts of this matter are simple indisputable.   On May 24, 2016, Defendant, then known as RX Safes, Inc., issued a $35,000.00, 8% Convertible Redeemable Note (the "Note") to Plaintiff. Dkt. 52, ¶ 9, Ex. B.   Defendant accepted Plaintiff's money in exchange for the terms of the Note.

---

[1] It is worth noting that Plaintiff recently discovered that, according to Mr. Mark Basile's biography on Defendant's OTCMarkets.com "Company Profile" page, Mr. Basile is not only the company's general counsel, but was also a co-founder of the company, when it was founded as Rx Safes, Inc. in 2010.  Defendant's Company Profile can be accessed at https://www.otcmarkets.com/stock/GNID/profile.

Additionally, according to Defendant's most recent Quarterly Statement, at the time the Note in dispute herein was issued, Mr. Basile was a Director of Defendant, with a base salary of $175,000.00 and a 50,000 share stock option, from February 1, 2016 to September 29, 2016, when he resigned to take on the role of general counsel.  Defendant's Quarterly Statement for the Period Ended September 30, 2016 can be found at https://www.sec.gov/Archives/edgar/data/1599385/000166357716000404/mainbody.htm.

The Note, then, issued on May 24, 2016, was negotiated and issued while Mr. Basile was serving as director, bluntly undermining Defendant's proclamations of victimization and usury.  Plaintiff will be contacting Defendant's counsel regarding this apparent conflict and seeking appropriate action, and will update the Court accordingly.

1

*Id.* at ¶ 21, Ex. E.  Defendant admits that it issued the Note, Dkt. 48, p.3, and does not dispute that Plaintiff funded the Note.

The Note provided Plaintiff with the right to convert portions of the Note's principal and interest into Defendant's common stock at a discount to the market price, at which point Defendant would be relieved of its obligation to repay those portions upon maturity.  Dkt. 52, ¶¶ 22-24, Ex. B.  To ensure the availability of shares in the event that Plaintiff executed this right, Defendant was required to reserve designated amounts of shares.  *Id.* at ¶¶ 32-35, Ex. B.  Upon exercising the conversion right, those designated portions would be exchanged for shares, at which point Plaintiff would become a shareholder in the Defendant corporation, free to hold or sell the shares.  *Id.* at 25-27, Ex. B.  On November 28, 2016, Plaintiff executed this right by duly submitting a notice of conversion seeking to convert $5,000.00 in the principal amount of the Note into 439,560 shares of Defendant's Common Stock.  *Id.* at ¶¶ 36-37, Exs. F, G.  Defendant, to date, has not delivered the shares.  *Id.* at ¶ 46.

It is also indisputable that Defendant's conduct constitutes multiple breaches of the SPA and the Note.  Defendant failed to deliver the shares within 3 business days of receipt of the November 28, 2016 notice of conversion and failed to maintain the required share reserve.  *Id.* at ¶ 40.  This conduct breaches Section 3(a) of the SPA and Sections 4, 8(b), 8(k), and 12 of the Note.  *Id.* at ¶¶ 48-55.  Defendant does not dispute that it failed to deliver the shares, and admits that it willfully breached the terms of the SPA and the Note.  In its Form 10-Q Quarterly Report, Defendant stated:

> [T]he Company terminated its transfer agent on September 6, 2016, preventing further toxic conversions and bringing all parties to the table to discuss a satisfactory settlement which would provide the Company with a window to redeem the outstanding notes over an extended period of time and prevent any further conversions for several months. Dkt. 52, ¶ 59, Ex. C.

Defendant knew that doing so would prevent Plaintiff from exercising its rights under the Note, but did so to gain leverage over Plaintiff and other noteholders, to provide itself with a window to redeem the outstanding notes over an extended period of time, and to prevent future conversions for several months.  Dkt. 53, ¶ 40.

Defendant is merely asking the Court to determine from the face of the Note that the right to obtain shares at a discount, the share reserve established in conjunction with that right, and liquidated damages, should be categorized as charged "interest" for the purpose of determining its criminal usury defense.  Next, it asks the Court to determine that despite case law stating that such notes are not usurious, that usurious intent can be implied from the face of the Note.  Finally, it asks the Court to void the Note in its entirety on the basis of these prior findings.

Thus, the question before the Court is whether it should expand the reach of New York's usury laws to include various items never before included, such that a sophisticated, publicly-traded corporation is able to walk away from its obligation to repay funds.  For the following reasons, it is respectfully submitted that the Court should not.

### III.   LEGAL STANDARD

Defendant purports to bring its motion pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.  However, the parties agreed that discovery is complete, Dkt. 35, and numerous documents and issues outside the pleadings are before the Court through Plaintiff's Motion for Summary Judgment, Dkts. 51-55.  Fed. R. Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Therefore, to the extent that Defendant argues in its Opposition to Plaintiff's Motion for Summary Judgment that material

issues of fact remain, if Plaintiff's Motion for Summary Judgment is denied on that basis Defendant's motion must be denied on the same grounds.

There are two types of usury defenses—civil usury and criminal usury. §5-501 of the New York General Obligations Law, the civil usury statute, provides that "no person . . . shall . . . charge, take or receive any money . . . as interest on the loan of any money . . . at a rate exceeding [16% per annum]." §190.40 of the New York Penal Law, the criminal usury statute, provides that "[a] person is guilty of criminal usury in the second degree when . . . he knowingly charges, takes or receives any money . . . as interest on the loan . . . of any money . . . , at a rate exceeding [25% per annum]." Further, §5-511 of the New York General Obligations Law provides that contracts prescribed in §5-501, the *civil* usury statute, shall be void, "but there is no specific statutory authority for voiding a loan that violates the criminal usury statute." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690, at *46 (S.D.N.Y. 2009). Finally, §5-521 of the New York General Obligations Law provides that a corporation may not assert the defense of civil usury, but that it may assert a defense of criminal usury. Defendant carefully conflates the two defenses to suit its arguments. While many Courts have analyzed criminal and civil usury under similar framework, it is nonetheless important to be mindful of which defense Defendant, a corporation, can avail itself of—criminal usury pursuant to N.Y. Pen. L. §190.40 vis-à-vis N.Y. G.O.L. §5-521, and not civil usury pursuant to N.Y. G.O.L. §§5-511 and 5-501.

"Usury is an affirmative defense, and a heavy burden rests upon the party seeking to impeach a transaction based upon usury." *Union Capital LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445, at *10-11 (S.D.N.Y. 2017). "Defendant [must] establish usury by clear and convincing evidence." *Sabella v. Scantek Med., Inc.*, 2009 U.S. Dist. 2009, at *45 (S.D.N.Y. 2009). "Criminal usury requires proof that the lender (1) knowingly charged, took or received (2)

annual interest exceeding 25% (3) on a loan or forbearance." *Id*. "For a loan to be criminally usurious under that section, the alleged usurer must 'knowingly' charge interest in excess of the legal rate." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980). "If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law." *Blue Wolf Capital Fund II v. American Stevedoring, Inc.*, 105 A.D.3d 178, 183 (1st Dep't 2013). There is a strong presumption against the finding of usurious intent when the loan is not usurious on its face. *See*, *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 77 (2d Cir. 1980); *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690 (S.D.N.Y. 2009); *LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 Misc. LEXIS 4294 (N.Y. Sup., Kings Co.).

"To determine whether a transaction is usurious, courts look not to its form but to its substance or real character." *Blue Wolf Capital Fund II.*, 105 A.D.3d at 183. Courts have analyzed the substance and real character of the precise elements that Defendant argues are "interest," and found that they are not. On March 31, 2017, the Hon. Richard J. Sullivan of this Court, analyzing a 42% discount on a nearly identical note to the Note here found that the discount was not interest. First, Judge Sullivan stated that "[plaintiff] simply held an option to convert shares, and it could have elected to obtain repayment in cash, which clearly would not have been usurious. Moreover, even if [plaintiff] chose to convert the loan principal into shares, any potential profit [plaintiff] might realize would . . . be too uncertain to incorporate into an interest rate calculation." *Union Capital, LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445, at *12 (S.D.N.Y. 2017). "Furthermore, even if the discount rate could be considered, a usury defense could no longer be applied against the loan once the Note principal was converted in equity in Defendant." *Id.* at 13. Similarly, on March 7, 2017, the Hon. J. Paul Oetken found that "though the initial transaction

took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense." *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 2017 U.S. Dist. LEXIS 32335, at *8 (S.D.N.Y. 2017).  New York State Courts have held the same:

> It is further noted that 'usury laws apply only to loans or forbearances, not investments.'  Although the initial transactions were loans, which were clearly not usurious . . . , the Securities Purchase Agreement provided that, upon conversion, [defendant] was selling securities under Note 1 to [plaintiff] as an 'investor.'  The conversion to stock would convert plaintiff from a lender to an investor with the right to share in the profits and losses of [defendant] . . . . Where the transaction provides for the purchase of shares of stock and the price of stock fluctuates so that it is unclear if the interest rate would exceed the legal rate of interest, no usury exists.

*LG Capital Funding, LLC v. Sanomedics Intl. Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294, at *29-30 (N.Y. Sup. Ct., Kings Co. 2015).

Next, "[u]sury does not apply where the loan imposes an interest rate greater than the statutory maximum only after a default." *Roswell Capital Partners LLC*, 2009 U.S. Dist. LEXIS 7690, at *45-46.  While Defendant, relies entirely on language from the outlier decision of *Madden v. Midland*, 2017 U.S. Dist. LEXIS 27109 (S.D.N.Y. 2017) to claim the contrary, as will be discussed in further detail below, the ultimate holding in *Madden* related to an individual using the usury cap provided in N.Y. Pen. L. §190.40 as a predicate for claims under the Fair Debt Collections Practices Act, and is inapplicable here.

Next, "there is no specific statutory authority for voiding a loan that violates the criminal usury statute." *Roswell Capital Partners LLC*, 2009 U.S. Dist. LEXIS 7690, at *46 (citing *Funding Group, Inc. v. Water Chef, Inc.*, 19 Misc. 3d 483 (N.Y. Sup. 2008)).  "More recent cases . . . have refused to void loans that violate the New York's criminal usury provision but instead contemplate using a non-usurious rate." *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH*

*Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113, at *125 (S.D.N.Y. 2016).  "If a party succeeds on its criminal usury defense, the Court would not void the entire agreement or interest rate 'but would rather revise the interest obligation to require a non-usurious rate.'"  *Star Funding, Inc. v. Vault Minerals, LLC*, 2017 U.S. Dist. LEXIS 128336, at *13 (S.D.N.Y. 2017).

Finally, while a "usury avoidance clause does not, by itself, save an agreement from a charge of usury, . . .  it may be relevant on the issue of intent."  *In re BH Sutton Mezz LLC*, 2016 Bankr. LEXIS 4113, at *123.  Indeed, considerations such as intent, the size of the transaction, the need or deserving of financial protection, the sophistication of the parties, and other equitable considerations were all applied in the *BH Sutton* Court's decision to not void the usurious transaction, but instead revise the interest obligation to a non-usurious rate.  *Id*. at 124-27.

As recently as January 19, 2018, the Hon. Victor Marrero of this Court ruled on an identical motion brought under Fed. R. Civ. P. 12(c).  Judge Marrero analyzed a 45% discount rate on an 8% convertible redeemable note identical to the Note here and denied the motion, determining that the discount and share reserve do not render the agreement usurious.  *Adar Bays, LLC v. Aim Exploration, Inc.*, 2018 U.S. Dist. LEXIS 9943, at *9-10 (S.D.N.Y. 2018).

Defendant's burden is great. It must demonstrate as a matter of law that the argued elements of the transaction are disguised interest, despite case law that says otherwise.  Next, as Defendant argued that "Adar has 'disguised' interest charges . . . ," Dkt. 48, p. 11, Defendant must rebut the presumption against usurious intent by clear and convincing evidence showing that Plaintiff knowingly charged a usurious rate—despite the interest on the face of the Note being 8%, two usury avoidance clauses, Plaintiff's reliance on numerous cases that expressly state that these items are not to be included as interest in the usury determination.  Even then, if Defendant were to meet this overwhelming burden, the Court should adjust the interest rate on the loan rather than void it.

**IV.   ARGUMENT**

**A.  The Discounted Price to Acquire Stock is Not Interest.**

Defendant's first point of relevance, Point III, starts with a contradiction, one of many throughout the motion.  Defendant begins, stating "[t]he usury statutes are very clear," despite beginning its brief by stating "[t]he New York State usury laws are both complicated and confusing."  Defendant then cites G.O.L. §5-511 and §5-501, the civil usury statutes, to support its proposition that "[a]mounts '*reserved*' to the lender, at the time the loan is made are included as interest charges under the states usury analysis."  Defendant, however, is precluded from asserting the defense of civil usury by a "very clear" statute, namely, §5-521, which states that, with the exception of loans prohibited in Section 190.40 of the penal law, "no corporation shall interpose the defense of usury in any action."  Defendant's consistent reference to §5-501 and §5-511, a defense unavailable to a corporation, shows its utter lack of support for this defense.

Based on this flawed premise, and the inapposite case law discussed below, Defendant argues "[t]he 35% discount is reserved interest that has a separate value that is legally required to be included in the usury analysis."  Dkt. 48, p. 11.

**i.    Defendant Willfully Disregards Numerous Cases for this Court Which Address the Issue Head On.**

Suspiciously absent from Defendant's motion are four cases that analyzed nearly identical conversion rights to those at issue here and held that they are not to be included in a usury determination, despite purporting to advance a survey of relevant case law in its addendum.[2]

---

[2] Notably, New York Rules of Professional Conduct 3.3(a)(2) states that "a lawyer shall not knowingly: fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . ."  Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.3 (a).  While Plaintiff is aware that the matters referenced are not controlling, Defendant's conduct in withholding them while purporting to set forth a survey to the Court is indicative of the lengths Defendant is willing to go to avoid its obligations.

The provision that Defendant contends is interest states:

> The Holder of this Note is entitled, at its option, after full cash payment for the shares convertible hereunder, after **180 days from the date of the note**, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the Common Stock") at a price ("Conversion Price") for each share of Common Stock equal to 65% of the **lowest trading price** of the Common Stock . . . for the **_twenty_** prior trading days including the day upon which a Notice of Conversion is received by the Company . . . . Dkt. 18-2, §4(a).

This Court has address nearly identical provisions and conversion rights on at least three occasions, and the New York Supreme Court has done so as well. First, in *Union Capital LLC v. Vape Holdings, Inc.*, 16-cv-1343 (RJS), 2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017), the Hon. Richard J. Sullivan analyzed a similar usury defense in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The note at issue in *Union* (the "Union Note") is nearly identical to the Note herein. The Union Note and the Note both provide for a principal amount due one year from issuance, 8% interest thereupon, 24% interest in the event of default, and a conversion right. The only difference was the discount itself and the number of "look-back" days. *Id.*, Dkt. 1-1. With regard to the discount provision, Judge Sullivan stated:

> Vape argues that, in considering the effective interest rate, the Court should also include the potential profit Union might reap by converting shares at a 42% discount. The Court disagrees. Union simply held an option to convert shares, and it could have elected to obtain repayment in cash, which would clearly not have been usurious. Moreover, even if Union chose to convert the loan principal into shares, any potential profit Union might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation . . . Furthermore, even if the discount rate could be considered, a usury defense could no longer be applied against the loan once the Note principal was converted into equity in Vape . . . Accordingly, Vape cannot meet its heavy burden in impeaching the transaction for usury. *Id.* at *12-13.

The same analysis applies here, and the 35% discount is not to be included in an interest calculation. At the time of contracting, the conversion right is too uncertain to include in an interest

calculation.  At the time of conversion, the transaction becomes an investment, not subject to usury laws.  Therefore, there is no circumstance under which the discount could be classified as interest.

This Court applied similar analysis in *Beaufort Capital Partners, LLC v. Oxysure Sys.*, 16-cv-5176(JPO), 2017 U.S. Dist. LEXIS 32335 (S.D.N.Y. 2017).  The notes at issue in *Beaufort* provided that "'at any time after the Maturity Date . . . this Note, including interest and principal, shall be convertible into shares at the higher of (a) $.0004; or (b) the amount that is a 30% discount' from the average closing price." *Id.* at *6.  Similar to Defendant, "Oxysure argue(d) . . . that a 30% discount in the equity conversion effectively increases the interest rate on the notes to a level that is usurious." *Id.* at *6-7.  The Hon. J. Paul Oetken found that Judge Oetken found that:

> The conversion feature allowed Beaufort to redeem the Notes for equity at a discounted price after the maturity date.  However, though the initial transaction took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense.  Thus Oxysure's reliance on the discounted equity conversion in calculating the applicable interest rate for its usury defense is misplaced. *Id.*

Finally, in *Adar Bays, LLC v. Aim Exploration, Inc.*, No. 17-cv-1290, 2018 U.S. Dist. LEXIS 9943 (S.D.N.Y. 2018), the Hon. Victor Marrero denied a motion pursuant to Fed. Civ. P. 12(c), on the same grounds, and by the same counsel, as herein.  In *Aim Exploration*, the note at issue was a convertible redeemable note, with an 8% interest rate, and a right to convert portions of the note's principal and accrued interest into shares of defendant's common stock. *Id.* at *1-2.  Plaintiff submitted a notice of conversion and defendant failed to deliver the shares.  After plaintiff's assertion of breach of the note and the SPA, defendant asserted the affirmative defense of criminal usury, and moved for judgment on the pleadings. *Id.* at *4.  Defendant argued that the 45% discount rate was interest that should be included in the usury computation. *Id.* at *6.  The court denied Defendant's motion, finding that:

"[a]ssuming full liquidity and immediate disposition, the profit realized from the purchase of stock at a fixed percentage discount at a fixed overall purchase price should generally be the same regardless of the undiscounted price of the stock. However, stock is not necessarily fully liquid and it cannot always be disposed immediately.  According to [plaintiff], there are numerous circumstances under which it could realize no profit from the conversion discount."  *Id*. at *8.

The court found that plaintiff "at minimum stated a plausible claim that a right to convert loan principal into shares, even at a fixed percentage discount, is materially more uncertain than a right to receive cash and therefore should not be considered as interest in a usury calculation."  *Id.* at *9.  The court concluded that "drawing all inferences in favor of the non-movant, the value of the conversion discount is too uncertain to include as interest in a usury calculation."  *Id.* at *10.  Defendant's counsel is undoubtedly aware of the determination in *Aim Exploration*,[3] yet it has failed to bring this highly poignant analysis before the Court, choosing instead to make its case on tenuous analogies to off-point tax disputes from other Districts and Circuits.

The New York Supreme Court has made the same determination as in *Aim Exploration*, *Union*, and *Beaufort*.  In *LG Capital Funding, LLC v. Sanomedics Int'l. Holdings, Inc.*, 2015 N.Y. Misc. 4294 (Sup. Ct. 2015), Plaintiff brought an action against a corporation based upon similar convertible notes.  The *Sanomedics* notes provided for a conversion price equal to 55% of the average of the lowest three trading prices for the ten prior trading days.  Defendant argued that the notes were usurious and unenforceable based on this conversion provision.  The court first found that the notes were not usurious on their faces because they provided for 8% and 10% per annum interest rates.  *Id*. at *29.  Next, the court stated:

It is further noted that 'usury laws apply only to loans or forbearances, not investments.  Although the initial transactions were loans, which were clearly note usurious, as plaintiff notes, the Securities Purchases Agreement provided that, upon conversion, [Defendant] was selling securities . . . to it as an 'investor.'  The

---

[3] In *Aim Exploration*, within hours of Judge Marrero's decision, Defendant improperly filed a notice of interlocutory appeal pursuant to 28 U.S.C. §1292.  As of the date of this filing, a stipulation of dismissal with prejudice pursuant to Fed. R. App. P. §42(b) has been filed and the appeal will likely be dismissed in the coming days.

conversion to stock would convert plaintiff from a lender to an investor with the right to share in the profits and losses of [Defendant] . . . . While a loan may not be disguised as an investment as a cover for usury . . . upon conversion at Plaintiff's election [Defendant's] debt to plaintiff [would] become an investment, upon which plaintiff took the risk that the stock could become completely worthless.  Where the transaction provides for the purchase of shares of stock and the price of stock fluctuates so that it is unclear if the interest rate would exceed the legal rate of interest, no usury exits.  *Id*. at *29-30.

Therefore, Defendant's analogies and leaps in logic are unnecessary, and the Court should apply the same analysis as it did in *Aim Exploration*, *Union*, and *Beaufort*.

### ii.    Defendant Willfully Disregards the Aforementioned, On-Point Cases in Favor of Inapposite and Foreign Case Law.

Instead of addressing the aforementioned matters, Defendant begins its crusade of analogizing.  First, Defendant cites to *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013) for the proposition that "value of stock option is critical in calculating true amount of loan as well as effective interest rate." Dkt. 48, p. 11.  *Hillair* is easily distinguishable, in that the *Hillair* defendant took out two loans which had to be repaid ***and*** delivered shares of stock, in contrast to here, where defendant would deliver stock ***in lieu of*** repaying the loan.  Defendant received loans, delivered stock, then also had to repay the loans with interest.  The *Hillair* Court found that defendant "undertook four transactions: they took out two loans, and they also twice sold stock to Plaintiff.  The value of the sold stock therefore is critical to calculating the initial loan amount and thus the interest rate."  *Hillair Capital Invs., L.P.*, 963 F. Supp. 2d at 340.  Here, Defendant was obligated to either repay the loan, or deliver stock, not both.

Next, defendant cites *Sabella v. Scantek Med. Inc.*, 2009 U.S. Dist. 88170 (S.D.N.Y. 2009) for the proposition that the "value of common stock given to lender should be taken into account when calculating interest rates." Dkt. 48, p. 11.  Like *Hillair*, in *Sabella*, the shares that the Court

was willing to entertain as constituting interest were delivered ***in addition to*** repayment of the loan, and not in ***lieu of repayment*** as is the case here.

Defendant's reliance on *Peltz v. Welsh, Carson, Anderson & Stow VII, L.P. (In re Bridge Info. Sys.)*, 311 B.R. 781 (Bankr. E.D. Mo. 2004) is vexing.  *In re Bridge Info Sys.*, a Bankruptcy Proceeding in the Missouri Eastern Bankruptcy Court, involved whether a "Call Option" to convert debt into equity constituted a "transfer" under 11 U.S.C. §547, relating to property in an estate.  *In re Bridge Info Sys.* has nothing to do with usury, interest, or New York law.

Next, Defendant cites *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 (S.D.N.Y. Oct. 25, 2001) for the proposition that "[i]n N.Y. a loan is usurious when the lender is entitled to the principal balance along with a legal rate of interest plus additional payment contingent on an event that is out of borrower's control." Dkt. 48, p. 11.  *Phlo* involved the delivery of stock (in the form of warrants) in addition to repayment of the loan, not in lieu of repayment of the loan.  Regardless, the Court in *Phlo* found that due to the fluctuating nature of stock prices "it was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain," and therefore, the warrants should not be included in a usury determination.  *Phlo Corp.*, 2001 U.S. Dist. LEXIS 17490, at *13.  Defendant argues that because "Plaintiff will always receive 35% more on each dollar that it converts into stock under the note," it "reserved to itself 35% more in actual value at the time the loan was made, insulating itself from all risk, even at the time of conversion."  Dkt. 48, p. 20.  This logic fails, as Defendant's definite language is not warranted. There is a laundry list of circumstances under which Plaintiff could realize no profit from the discount, including Defendant's delinquency with the SEC, insufficient demand for the stock, sudden decreases in the stock price. *See Aim Exploration, Inc.*, 2018 U.S. Dist. LEXIS 9943 *8-9 (S.D.N.Y. 2018); *Union Capital LLC*, 2017 LEXIS 60445 *12 (2017).

13

Therefore, the discount is not "actual value" and that Plaintiff was not "insulated from all risk," and, like the warrants in *Phlo*, it "is unclear if and when the loan will be repaid [through sale of stock], and it is far from clear, in light of the numbers and the circumstances, that the effective interest rate would exceed 25% in any event." *Phlo Corp.*, 2001 U.S. Dist. LEXIS 17490, at *14.

Next, Defendant relies on *Custom Chrome, Inc. v. Commissioner*, 217 F.3d 1117 (9th Cir. 2000) and *AWG Leasing Tr. v. United States*, 592 F. Supp. 2d 953 (N.D. Ohio 2008). Each of these matters, tax related disputes from the Ninth Circuit and Northern District of Ohio, make no mention of usury, intent, conversion discounts, share reserves, or liquidated damages.

Finally, Defendant cites to *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 961 N.Y.S.2d 86 (1st Dep't, 2013). The *Blue Wolf* transaction involved a loan agreement with a principal amount of $1,130,000.00 and a stated interest rate of 12% per annum. *Id*. at 180. The loan agreement also charged the debtor with a $50,000.00 "commitment fee," a $75,000.00 deposit against creditor's costs and expenses, and a $200,000.00 "deposit against future commitment fees." *Id.* As a result, debtor received only $805,000.00 of the $1,130,000.00 principal of the loan. Three months later, Defendant demanded repayment of $1,056,569.00, then two months after that, demanded repayment of $1,172,513.00. The court found that "the $200,000.00 deposit 'against future commitment fees' constitute[d] additional interest within the meaning of the statute" because Blue Wolf could retain the deposit "in its sole discretion." *Id.* at 183. Because "usury [could] be gleaned from the face of the [loan], intent [was] implied and usury [was] found as a matter of law." *Id.* The Court did not determine the "true character" of the other $125,000.00 withheld, as the $200,000.00 cash deposit withholding on its own made the loan usurious. *Id.* at 183. Defendant does not argue that amounts of money withheld here make the loan usurious. It argues that a discount to a conversion right related to a fluctuating stock price,

14

which may or may not be executed throughout the life of the contract, is akin to withholding cash. The two are not the same, and this Court has already come to that conclusion, as discussed above. Therefore, Defendant's reliance on *Blue Wolf* is improper.

Defendant's logical leap from the aforementioned cases to the facts before the Court is long and unjustifiable.  Defendant states that "Plaintiff has reserved to itself a 35% discount as to the market price of defendant's public stock . . . until all amounts under the loans are repaid by way of a cash payment, or the conversion of debt into stock." Dkt. 48, p.12.  Next, despite having acknowledged that Plaintiff is not entitled to both the stock and repayment in the prior sentence, Defendant states that "[t]he 35% discount is reserved interest that has a separate value that is legally required to be included in the usury analysis because for each $1.00 of principal and interest, defendant is required to pay back $1.35." *Id.* at 12.  As shown above, such certainty is unwarranted and there is a plethora of circumstances under which Plaintiff would not receive any shares at any discount.

Defendant's attempts to liken the discount to the money withheld from the face of the loan in *Blue Wolf*, to stock warrants that the court in *Phlo* determined were not part of interest, to the tax treatment of stock warrants in *AWG Leasing*, and the tax repercussions of original issue discounts in *Custom Chrome* are unwarranted and unnecessary.  None of these cases stand for the proposition that a discount contained in a conversion right, or anything similar thereto, should be considered interest for the purposes of a usury determination.

### B.  The Share Reserve is Not Interest.

Defendant's next argument is a more-tenuous iteration of its prior argument.  Defendant attempts to characterize a share reserve, meant to effectuate conversions discussed in the section above, as charged interest for the purposes of a usury determination.

Section 12 of the Note states:

> The Company shall issue irrevocable transfer agent instructions reserving 278,000 shares of its Common Stock for conversions under this Note (the "Share Reserve"). Upon full conversion of this Note, any shares remaining in the Share Reserve shall be cancelled. . . The company should at all times reserve a minimum of three times the amount of shares required if the note would be fully converted.  Dkt. 18-2, §12.

Defendant's argument fails for numerous reasons.  First, the share reserve is not charged to Defendant under any definition of the word.  Second, the shares are placed in the control of Defendant's own agent, so it remains in legal possession of them.  Third, shares would only be delivered to Plaintiff if it exercises its conversion right, placing the circumstances back into the debt versus equity framework applied by this Court multiple times for the conversion right itself. Fourth, if the Note is not converted or shares remain after the Note is fully converted, the reserve is cancelled and the shares are returned to Defendant.  Fifth, Defendant's argument is premised on the §5-511, a statute applicable only to the defense of civil usury.  Finally, it relies on two cases which do not support the propositions that Defendant claims they do.

Defendant's argument was considered and rejected in *Aim Exploration*.   In *Aim Exploration*, defendant argued that the "Note is criminally usurious because it reserved 1,168,000 shares of stock at the time the loan was made."  *Aim Exploration*, 2018 U.S. Dist. LEXIS 9943, at *10.  However, the Court found that "the reservation of shares was not an independent payment to [plaintiff], but merely a mechanism by which to effectuate the share conversion as envisioned by the Note and the SPA.  Since the share conversion feature does not render the agreement usurious, neither does the reservation of shares provision."  *Id*. at *12.  Likewise, here, the share reserve is merely a mechanism to effectuate the conversion and does not render the agreement usurious.  As Defendant admits, the reserve is established in order "to effectuate future repayment conversions of the loans into equity."  Dkt. 48, p. 13.

The *Aim Exploration* decision is further supported by the Court's decision in *Phlo*, which held that due to the fluctuating nature of stock prices, "it was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain." *Phlo Corp.*, 2001 U.S. Dist. LEXIS 17490, at *13. As discussed above, various events could cause Plaintiff to realize no value at all from the conversion right, and thus, the share reserve. Defendant could become delinquent in its filings, become delisted, experience sudden decreases in its stock price, experience no demand for its stock, or simply cancel the reserve or refuse a conversion. Adding these potential scenarios to the uncertainty of when, if at all, Plaintiff would convert portions of the Note, like the warrants in *Phlo*, it is far from certain that Plaintiff could ever receive an effective interest rate in excess of 25%. *Id*.

Last, the authority cited by Defendant in support of this argument is inapplicable. Defendant relies on N.Y. G.O.L §5-511 to support its argument that a "reserve" of anything can be considered interest. Dkt. 48, pp. 13-14. As indicated throughout this Opposition, Defendant conflates the civil usury statutes and the criminal usury statutes. §5-511 is applicable to §5-501, not §190.40 of the New York Penal Law. To interpret §5-511 differently would render the Section's reference to §5-501 superfluous. Therefore, Defendant's reliance on the §5-511 is inappropriate.

The cases cited by Defendant are equally inapplicable. As discussed above, *Blue Wolf* involved a creditor who withheld over $300,000.00 in cash on a $1,150,000.00 loan, yet demanded nearly the full amount of the loan in 3 months. *Blue Wolf Capital Fund II, L.P.*, 105 A.D.3d at 180-83. There is no mention of reserving items for potential future performance. Likewise, *Funding Grp., Inc. v. Water Chef, Inc.*, 19 Misc. 483 (N.Y. Sup. Ct. 2008), involved a $25,000.00 loan to be paid in 45-days, with an interest rate of 10% per month (or 120% per year), as well as

an incentive fee in the form of delivery of stock with a value of $7,500.00 (243% of the loan), bringing the interest rate on the face of the loan to 363%.  The court did not address anything reserved and related to future performance in lieu of repayment.  Thus, both cases are inapplicable to Defendant's criminal usury defense.

Given the lack of support of Defendant's argument and the contrary persuasive case law of this Court, Defendant's argument that the share reserve should constitute interest for the purposes of a usury determination completely fails.

### C.  The Post-Default Interest Rate is Irrelevant to the Usury Determination.

#### i.   *Madden*'s Holding Does Not Apply to this Matter, and Charges Following A Default Are Not Included in A Usury Determination.

Defendant's next argument seeks to overturn decades of case law, which states that usury limits do not apply when rates charged only after default exceed usury limits, based on an off-point holding in a recent decision by the Hon. Cathy Seibel of the Southern District Court of New York in White Plains.  Defendant misstates the holding, and thus the law.  Therefore, interest charged in excess of 25% only after default does not render a transaction usurious.

*Madden v. Midland Funding, LLC*, 11-cv-8149 (CS), 2017 U.S. Dist. 27109 (S.D.N.Y. 2017), unlike the present matter, is an archetypal scenario that usury laws were intended to prevent. Plaintiff, an individual, was charged a variable periodic interest rate amounting to 32.24% by a credit card company.  Ms. Madden filed a complaint in which she attempted to assert a private cause of action based on New York's criminal and civil usury statutes.  *Id.* at *4. Judge Seibel ultimately granted the creditor's motion for summary judgment as to Plaintiff's usury claims because "criminal usury law does not provide a private right of action."  *Id.* at *24.  Despite deciding to grant summary judgment to the creditor on different grounds, Judge Seibel, after going to great lengths to distinguish dozens of New York State Court decisions that "suggest that the

criminal usury cap does not apply to defaulted obligations," stated "I believe that the New York Court of Appeals, were it to face this situation, would hold that the criminal usury cap limits interest charged on debts to 25% annually, even for defaulted debts." *Id.* at *17.

Judge Seibel's survey of Federal decisions is similar.  Judge Seibel acknowledges numerous cases that state "it is well established that the usury statutes do not apply to defaulted obligations," but distinguishes them, stating "[m]any of the cases that seem to suggest that the criminal usury cap does not apply to defaulted obligations in fact addressed default rates that were below 25%, and so would not have violated the criminal usury cap even if it applied." *Id.* at *18. However, this logic is flawed when compared to the Court's consistent reference to both usury statutes as inapplicable to defaulted obligations.  For example, *Llewellin v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 145437 (S.D.N.Y. 2015), states "New York's usury laws do not apply to 'defaulted obligations.'"  Likewise, *Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249 (S.D.N.Y. 2010) states "New York usury laws do not apply to default obligations."  Finally, *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) states "it is well established that the usury statutes do not apply to defaulted obligations."  Notably, in each of these cases, this Court chose to refer to usury laws and statutes as plural, not distinguishing between civil and criminal usury.  Thus, contrary to Judge Seibel's determination, it is improper to infer that the Court's consistent reference to "usury laws" and "usury statutes" was a persistent error.

Even if Judge Seibel's finding was not contrary to a long-line of case law, it should be viewed in the context of why Her Honor reached that decision.  Judge Seibel granted defendant summary judgment on plaintiff's claims arising out of the usury laws, but reached her conclusion in the context that interest in excess of the usury limit "is available as a predicate for Plaintiff's

Fair Debt Collection Practices Act claims." *Id.* at \*23.  While those claims have yet to be resolved, the FDCPA claims could only be asserted by a natural person.  Therefore, it is questionable if this decision would have any bearing on this matter whatsoever, as Defendant is a corporation, not permitted to avail itself to the FDCPA.

To summarize, Judge Seibel determined that: (i) the civil usury cap does not apply to defaulted obligations; (ii) the criminal usury cap may apply to defaulted obligations, but the matter may ultimately need to be decided by the New York Court of Appeals; (iii) that the usury statutes do not provide for a private right of action; and, (iv) that interest charged to an individual in excess of the criminal usury cap is available as a predicate for FDCPA claims sufficient to survive summary judgment.  Therefore, *Madden*'s holding does not apply to this matter, and charges following a Default are not included in a usury determination.

### ii.    Liquidated Damages Are Not Interest.

Next, Defendant shamelessly argues that liquidated damages and interest are indistinguishable.  First, based on *Madden*, Defendant claims that the because usury analysis can include interest charged after default, the Court should find that the agreed-upon liquidated damages are interest.  Then, based on the civil usury statutes, §5-511 and §5-501, Defendant claims that the liquidated damages render the transaction void.  By Defendant's logic, *Madden* stands for the proposition that any damages in relation to the exchange of money, including enforceable liquidated damages, expectation and consequential damages, can render a transaction usurious and void.  It is confounding.

Assuming, *arguendo*, that the Court's holding in *Madden* is applicable and valid, the leaps in Defendant's argument remain impossible to justify.  Defendant cites *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) and *Union Capital LLC v. Vape*

*Holdings Inc. & Island*, 2016 U.S. Dist. LEXIS 72973 (S.D.N.Y. 2016), which each refer to the principal that liquidated damages are unenforceable if they are grossly disproportionate to the possible loss and the actual damages are not difficult to ascertain at the time of contracting.  In such a case, the Court will deem the damages penalties, and not enforce them.  Then, without justification or legal support, Defendant equates penalties with "disguised default interest" and again seeks to void the entire agreement pursuant to §5-511 and §5-501.

This argument is replete with legal flaws and logical fallacies. First, damages, liquidated or otherwise, are not the same as interest.  To equate the two is a fundamental misinterpretation of basic legal theory.  Here, the liquidated damages are intended to provide a measure of damages in the event of breach.  In this case, the liquidated damages were an estimate of the losses from potential resale of the stock to third parties that would incur if Defendant failed to deliver shares.  Thus, the liquidated damages would only take effect if Defendant fails to deliver shares.  If the liquidated damages are unenforceable, the Court would apply an alternative calculation of Plaintiff's damages, not void the contract entirely.  *See Union Capital LLC*, U.S. Dist. LEXIS 60445, at *10.  Defendant's logic also fails due to the speculative nature of whether or not these damages would ever take effect.  For example, Defendant could have delivered the shares and there would be no damages whatsoever or Plaintiff could decide not to convert. When such speculation is required, it is well settled that such items are not interest.  *See Adar Bays, LLC v. Aim Exploration, Inc.*, 2018 U.S. Dist. LEXIS 9943, at *9-10 (S.D.N.Y. 2018); *Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 U.S. Dist. LEXIS 17490 (S.D.N.Y. Oct. 25, 2001).  Finally, Defendant does a contradictory about-face related to measuring interest at the time of contracting, by retroactively detailing the amounts it owes Plaintiff to conclude that the interest rate is 167%.

Finally – the omnipresent flaw throughout Defendant's memorandum – is that it seeks to void the contract pursuant to §5-511 and §5-501.

It is worth noting here that in *Union Capital Funding, LLC*, 2017 U.S. Dist. LEXIS 60445, after finding the liquidated damages provision to be unenforceable, the Court determined that Union's damages are "ascertainable through expectation damages, calculated by subtracting the contract price—the price at which [Plaintiff] is entitled to convert shares under the Note—from the market price of shares on the date of breach." *Id.* at *16.  As for damages related to breaches of the balance of the note, Judge Sullivan stated that "the Court would take the date of the breach and determine the conversion price [Plaintiff] was entitled to on that date, the number of shares [it] was authorized to convert, and the market price on the date of the breach." *Id.*  Thus, contrary to Defendant's position, should the Court determine that the liquidated damages are unenforceable, it should nonetheless award Plaintiff expectation damages.

Applying the *Union* calculation to the present facts shows that Plaintiff has clearly been damaged.  With regard to the November 28, 2017 conversion, Plaintiff's damages are $8,186.80,[4] as well as repayment of $5,000.00.[5]  With regard to the remaining balance, pursuant to Judge Sullivan's calculation, Plaintiff's expectation damages are $49,120.87, in addition to repayment of the $30,000.00 balance of the Note.[6]  Accordingly, applying this calculation of damages, Plaintiff is entitled to a total of $92,307.67.

---

[4] Price on the date of breach ($.03) – Conversion price ($.011375) = Expectation damage per share ($.018625). Number of shares pursuant to the Conversion (439,560) x Expectation price ($.018625) = $8,186.80.
[5] Because the expectation damages calculation outlined by Judge Sullivan subtracts the contract price from the market price, expectation damages represent only the profits Plaintiff would have earned if it sold the stock, not the entire value of the conversion.  In other words, if the calculation multiplied the market price by the total shares ($.03 x 439,560 = $13,186.08), rather than the difference between the market price and contract price by the total shares ([$.03-$.011375] x 439,560 = $8,186.80), the entire conversion value would be accounted for.  The difference of $5,000.00 between these figures, or $.018625 per share, represent Plaintiff's cost of the asset acquired, which would have also been recouped upon sale.
[6] Balance of the Note ($30,000.00)/Conversion Price ($.011375) = Shares to which Plaintiff would have been entitled (2,637,362). Number of shares (2,637,362) x Expectation Price ($.018625) = $49,120.87.

Therefore, it is clear that Plaintiff has been damaged by Defendant's breach, that damages are not interest, and that the damages can be determined from the face of the Note or Defendant's public stock prices.

### D.  Defendant Cannot Prove the Intent Necessary for a Finding of Usury.

Even if the Court were to accept Defendant's tenuous analogies in favor of this Court's prior findings, Defendant is still unable to prove the necessary intent.  "When a note is not usurious on its face, a court will not presume usury, rather, the party asserting the defense must prove all the elements.  An essential element of the affirmative defense of usury is the lender's usurious intent."  *Union Capital LLC*, U.S. Dist. LEXIS 60445, at *10 (internal quotation omitted).  Analyzing a nearly identical note to the Note here, Judge Sullivan found that it was not usurious on its face.  *Id*. ("On its face, the Note bears an interest rate of 8%").  Indeed, Defendant admits that its claims of usury relate to purported disguised interest, not interest on the face of the Note.  Dkt. 48, p.12 ("Defendant contends that ADAR has 'disguised' interest charges in an attempt to evade the usury laws . . . .").  Therefore, Defendant must prove Plaintiff issued the Note with a usurious intent, and Defendant cannot meet this burden.

Plaintiff included two provisions in the Note showing that it did not intend for the transaction to be usurious.  Section 8(n) of the Note states "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, that at the highest rate of interest permitted by law."  Dkt. 18-2, §8.  Section 9 states "[i]n case any provision of this Note is held . . . to be . . . unenforceable, such provision shall be adjusted rather than voided . . . ."  Dkt. 18-2, §9.  While a "usury avoidance clause does not, by itself, save an agreement from a charge of usury, . . . it may be relevant on the issue of intent."  *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, 2016 Bankr. LEXIS 4113,

at *123 (S.D.N.Y. 2016).  By deliberately setting the default interest rate below the 25% threshold and including two clauses for adjusting the rate if found to be in excess of the legal maximum, it is clear from the Note that Plaintiff did not intend to charge a usurious amount of interest.

### E.   Even if the Court were to Find Provisions of the Note Usurious, the Loan Would Be Adjusted, Rather than Voided.

Given the recent trend in case law, the sophistication of the parties, the lack of intent on behalf of Plaintiff, and the balance of the equities, if the Court were to determine that the Note charges disguised interest in excess of 25%, the Court should adjust the interest to a permissible rate, rather than void the Note in its entirety.  Several cases state that the remedy in the event of a usurious agreement is to revise the interest rate, rather than give the borrower a complete windfall by voiding the loan entirely.

"There is no specific statutory authority for voiding a loan that violates the criminal usury statute."  *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 U.S. Dist. LEXIS 7690, at *46 (S.D.N.Y. 2009), and this Court and others, on numerous occasions, have recognized that the interest should be adjusted, rather than voided.  *See e.g.*, *Star Funding, Inc. v. Vault Minerals, LLC*, 2017 U.S. Dist. LEXIS 128336, at *13 (S.D.N.Y. 2017)("If a party succeeds on its criminal usury defense, the Court would not void the entire agreement or interest rate 'but would rather revise the interest obligation to require a non-usurious rate'"); *Prof. Merch. Advance Capital, LLC v. C Care Servs., LLC*, U.S. Dist. LEXIS 92035, at *14 n.4 (S.D.N.Y. 2015)("If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless not void the Agreement *ab initio*, but would rather revise the interest obligation to require a non-usurious rate."); *Koenig v. Slazer Enters.*, 27 Misc. 3d 1212(A) (Sup. Ct. N.Y. 2010)("[T]here is nothing in the General Obligations Law or Penal Law that requires that the Court deem these transactions void"); and *Funding Grp., Inc. v. Water Chef, Inc.*, 19 Misc. 3d 483, 852

24

(Sup. Ct. N.Y. 2008) ("There is no specific statutory authority for voiding a loan that violates the criminal usury statute.").  In *In re BH Sutton Mezz LLC*, 2016 Bankr. LEXIS 4113, this Court reviewed numerous cases that supported applying a revised interest rate, considered factors such as the sophistication of the parties, intent, the size of the transaction, and Defendant's need for financial protection before, then held that "the appropriate remedy is to revise the interest obligation on the [loan] to an appropriate non-usurious rate."  *In re BH Sutton Mezz LLC*, 2016 Bankr. LEXIS 4113, at *126.

Here, these factors clearly favor adjustment.  Defendant, a publicly traded entity is clearly sophisticated.  Its current CEO has over 10-years of industry experience, and the Note was issued while Defendant's counsel and co-founder, clearly aware of usury laws, was a director.[7]  It is clear from the face of the Note that Plaintiff contemplated usury laws and intended the interest rate to fall below the threshold.  Defendant admits that it willfully breached the contract to renegotiate its terms and extend payment, and granting Defendant this windfall would embolden Defendant to walk away from the near $600,000.00 of convertible notes on its books as of its last public filing. Therefore, it is clear that dismissal is not warranted, and "the appropriate remedy is to revise the interest obligation on the [loan] to an appropriate non-usurious rate," even if the Court ultimately decides the Note provided for a usurious interest rate.

V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

---

[7] See Footnote 1, p. 1, *supra*.

Dated: February 13, 2018
       New York, New York

RESPECTFULLY SUBMITTED,
**GARSON, SEGAL,**
**STEINMETZ, FLADGATE LLP**
*ATTORNEYS FOR PLAINTIFF*

**BY:** _____/s/_____

KEVIN KEHRLI
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
**TELEPHONE:** (212) 380-3623
**FACSIMILE:** (347) 537-4540
**EMAIL:** KK@GS2LAW.COM