18-3023
*Adar Bays, LLC v. GeneSYSID, Inc. FKA RX Sales, Inc.*

<div style="text-align:center">

1 𝕴𝖓 𝖙𝖍𝖊

2 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

3 𝕱𝖔𝖗 𝖙𝖍𝖊 𝕾𝖊𝖈𝖔𝖓𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

4 _____

5

6 August Term 2019

7

8 (Submitted: February 26, 2020    Questions Certified: June 11, 2020)

9

10 Docket No. 18-3023

11 _____

12

13 ADAR BAYS, LLC

14

15 *Plaintiff-Appellee*,

16

17 – v. –

18

19 GENESYS ID, INC. FKA RX SALES, INC.

20

21 *Defendant-Appellant*

22 _____

23

</div>

24 B e f o r e :

25

26 PARKER, LIVINGSTON, NARDINI, *Circuit Judges*.

27

28 <div style="text-align:center">_____</div>

29

<div style="position:absolute; border:1px solid black">
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jun 11 2020
</div>

CERTIFIED COPY ISSUED ON 06/11/2020

Appeal from an order of the United States District Court for the
Southern District of New York (Carter, *J.*), granting summary judgment
in favor of Adar Bays, LLC, the holder of a Convertible Redeemable
Note securing a loan to GeneSYS ID, Inc. The loan was in default and
the Defendant made an affirmative defense of usury. The district court
held that the Note's interest rate did not violate the New York State
criminal usury law, N.Y. Penal Law § 190.40. Because the resolution of
this appeal turns on questions of New York law for which no controlling
decisions of the New York Court of Appeals exist, we CERTIFY two
questions to the Court of Appeals.

——————

KEVIN KEHRLI, Garson, Segal, Steinmetz, Fladgate LLP, New York,
        NY, *for Plaintiff-Appellee.*

JONATHAN URETSKY, Phillipson & Uretsky, LLP, New York, NY, *for
        Defendant-Appellant.*

——————

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal arises from an action brought by Adar Bays, LLC, against

GeneSYS ID, Inc., to collect on a Convertible Redeemable Note ("Note")

issued in connection with a loan from Adar Bays to GeneSYS, which had

defaulted. The Note permitted Adar Bays to convert any outstanding loan

balance into GeneSYS common stock at a 35% discount from the stock's

market price. The primary issue presented is whether this conversion

1    option meant that the Note's interest rate exceeded the 25% cap set by New

2    York's criminal usury law, N.Y. Penal Law § 190.40.

3        In the court below, GeneSYS moved to dismiss the complaint on the

4    ground that the Note was usurious. Adar Bays cross-moved for summary

5    judgment. The United States District Court for the Southern District of

6    New York (Carter, *J.*) granted Adar Bays' motion, holding that the Note's

7    conversion option did not result in a criminally usurious interest rate.

8        The first issue presented is whether the Note violates New York's

9    criminal usury law because it contains a conversion option with a 35%

10    discount that, if treated as interest, raises the interest rate above the

11    statutory maximum (25%).  Adar Bays, on the other hand, contends that

12    upon conversion, the transaction becomes an equity investment to which

13    usury laws do not apply. The second issue presented is, if the interest rate

14    does violate § 190.40, whether the Note is void *ab initio*, as it would be if

15    New York's civil usury law, N. Y. Gen. Oblig. Law § 5-511, applied. If the

16    Note is void, GeneSYS would be relieved of its obligation to repay the

17    money it borrowed.

1    Because the resolution of both issues turns on questions of state law

2    for which no controlling decisions of the New York Court of Appeals exist,

3    we certify two questions to the Court of Appeals. *See* 22 N.Y.C.R.R.

4    § 500.27(a) and 2d Cir. R. 27.2(a). Although the parties did not request

5    certification, we may seek it *nostra sponte* and we do so here. *Corsair Special*

6    *Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 182-83 (2d Cir. 2017).[1]

7                                    **BACKGROUND**

8    GeneSYS is a publicly held corporation in New York that owns

9    several companies which produce various types of medical supplies. Its

10   shares are traded in the over-the-counter market. In May 2016, GeneSYS

11   borrowed $35,000 from Adar Bays. The transaction was at arm's length and

12   both parties were represented by counsel. The loan was documented by a

13   Securities Purchase Agreement and Convertible Redeemable Note that

14   obligated GeneSYS to repay any outstanding balance by May 2017. The

15   Note contained a stated annual interest rate of 8% as well as significant

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

1    prepayment penalties. The Note also provided that Adar Bays, at its sole

2    discretion, was entitled, at any time after 180 days from the Note's

3    issuance, to convert any or all of the outstanding balance into shares of

4    GeneSYS common stock at a conversion price set at 65% of the lowest

5    trading price of the common stock as reported on the National Quotations

6    Bureau OTCQB exchange market for the twenty prior trading days. The

7    Note also provided that GeneSYS was to instruct its transfer agent to hold

8    in reserve stock amounting to three times the number of shares required if

9    the Note were fully converted to facilitate any conversion by Adar Bays.

10    In May 2016, the Note was issued and GeneSYS directed Adar Bays

11    to disburse $2,000 for its attorney's fees and to disburse the remaining

12    $33,000 to GeneSYS. Adar Bays complied with those directions and the

13    Note was fully funded. Six months later, in November 2016, Adar Bays

14    submitted a notice to GeneSYS to convert $5,000 of the amount outstanding

15    into common stock. GeneSYS acknowledged receipt of the notice but

16    refused to honor it. In December 2016, Adar Bays sent GeneSYS a notice of

1   default. To date, GeneSYS has not delivered any shares or repaid any of the

2   outstanding principal or any interest.[2]

3        Adar Bays sued in February 2017, alleging, essentially, breach of

4   contract. GeneSYS moved to dismiss the complaint pursuant to Fed. R. Civ.

5   P. 12(c) on the ground that the Note was void as usurious, and Adar Bays

6   moved for summary judgment on all claims. The district court granted

7   summary judgment in favor of Adar Bays and denied GeneSYS's motion to

8   dismiss. Though immaterial to the issues presented here, the district court

9   also held that the liquidated penalties clause and daily penalties clause in

10  the Note were invalid. This appeal followed.

11                              DISCUSSION

12                                  I.

13       N.Y. Penal Law § 190.40 provides that a loan is criminally usurious

14  when the parties knowingly provided for an interest rate of 25% or more.

---

[2] On GeneSYS's 10-Q for the period ending September 30, 2016, the company stated that it had "terminated its transfer agent on September 6, 2016, preventing further toxic conversions and bringing all parties to the table to discuss a satisfactory settlement."

1    With exceptions not relevant here, a corporation may assert criminal usury

2    as an affirmative defense to efforts to collect on a loan. N.Y. Gen. Oblig.

3    Law § 5-521; *see, e.g., Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring, Inc.*,

4    105 A.D.3d 178, 182 (N.Y. 1st Dep't 2013).

5         New York's civil usury laws operate somewhat differently. The civil

6    usury statute prohibits loans at rates exceeding 16% per year. N.Y. Gen.

7    Oblig. Law § 5-501. Corporations cannot assert a civil usury defense. N.Y.

8    Gen. Oblig. Law § 5-5-521. Section 5-511 provides that all contracts

9    "whereupon or whereby there shall be reserved or taken, or secured or

10   agreed to be reserved or taken, any greater sum, or greater value, for the

11   loan or forbearance of any money, goods, or other things in action, than

12   prescribed in section 5-501, shall be void." There is no parallel provision in

13   the criminal usury law for voiding a loan found to be criminally usurious.

14        When a note is not usurious on its face, usury is not presumed and

15   the debtor must prove all the elements of usury, including usurious intent.

16   "[A] heavy burden rests upon the party seeking to impeach a transaction

17   for usury." *Gandy Mach. Inc. v. Pogue*, 106 A.D.2d 684, 685 (N.Y. 3d Dep't

1   1984). Moreover, a debtor asserting a defense of usury must establish the

2   elements of usury "by clear and convincing evidence." *Blue Wolf Capital*

3   *Fund II*, 105 A.D.3d at 183 (citing *Giventer v. Arnow*, 333 N.E.2d 366, 369

4   (N.Y. 1975)). Finally, usury laws only apply to loans. If there is no loan,

5   "there can be no usury, however unconscionable the contract may be."

6   *Seidel v. 18 E. 17th St. Owners, Inc.*, 598 N.E.2d 7, 11-12 (N.Y. 1992).

7       GeneSYS principally argues that the 35% discount that applies if

8   Adar Bays elects to convert any outstanding debt into stock violates

9   § 190.40 because that discount rate is the Note's "real" interest rate. This is

10  so, according to GeneSYS, because Adar Bays enjoyed a unilateral right to

11  convert at that rate, which was fixed when the Note was issued and did not

12  fluctuate with market conditions. Thus, for each $1.00 of principal that

13  Adar Bays requests be converted into shares, GeneSYS is required to

14  deliver stock worth $1.35.[3] In other words, GeneSYS argues, a conversion

---

[3] One question which might be fairly asked about this accounting is what value GeneSYS is actually transferring to Adar Bays. The *issuance* of further stock, which GeneSYS may do essentially by corporate fiat, does not cost GeneSYS anything, even though those shares may be worth something if sold. Of course, by issuing and then transferring the requisite stock to satisfy the debt, GeneSYS

1    option allowing Adar Bays to recover the balance as shares at a fixed 35%

2    discount is interest, separate from the stated 8% rate that applies to cash

3    repayments. More simply: the interest on a cash repayment is 8% per

4    annum, and the "interest" on a 'converted stock repayment' is 35%, the

5    latter, according to GeneSYS, rendering the note usurious under Section

6    190.40.  GeneSYS also argues that the Court should read § 190.40 *in para*

7    *materia* with § 5-511 and hold the Note void.

8           Adar Bays takes the position that the 35% discount is not interest

9    because at the time of contracting, the point at which the usury

10   determination is made, it would be entirely speculative whether Adar Bays

---

may have rational concerns about subsequent sales by Adar Bays flooding the
market in its securities and thus perhaps reducing GeneSYS's stock price. But
that decline in stock price, if it is a "transfer of value" at all, comes at the expense
of GeneSYS's existing shareholders (including Adar Bays if it is unable or
unwilling to sell some or all of its newly transferred shares), who are now left
holding a less valuable security. GeneSYS thus may be rightly concerned with
the perceptions of equity investors as to its appeal as an investment and the
impact of those perceptions on its ability to seek capital from equity markets in
the future. However, the value of those concerns *to GeneSYS* is only uncertainly
related to the "$1.35 in value for every $1 of principal" accounting which
GeneSYS posits. Perhaps the value to GeneSYS is irrelevant in the usury analysis,
but, if that is true, the possibility that the shares transferred could become
worthless due to bankruptcy or other events remains as an obstacle to the neat
calculus which GeneSYS puts forth.

1    would ever exercise its conversion option. Once that speculation is

2    removed—if and when Adar Bays elects to convert some or all of the

3    balance—that transaction becomes an equity investment, which is not

4    subject to the usury laws.[4] *See, e.g., LG Capital Funding, LLC v. Sanomedics*

5    *Int'l Holdings, Inc.*, No. 508410/2014, 2015 WL 7429581, at *10 (N.Y. Sup. Ct.

6    Nov. 23, 2015).

7            This is not the first case in our Circuit to present this issue; however,

8    previous cases have not resolved it.  *See, e.g., Blue Citi LLC v. 5Barz Int'l Inc.*,

9    No. 18-cv-3044, 2020 WL 1043452 (2d Cir. Mar. 4, 2020); *LG Capital Funding,*

10   *LLC v. On4 Communications, Inc.*, No. 18-3019, 2020 WL 1074501 (2d Cir.

11   Mar. 6, 2020). The New York courts to have considered this issue have

---

[4] Although not subject to New York's usury laws, such an equity transaction may
still be subject to regulation and enforcement actions under federal securities
laws. *See, e.g.*, Press Release, Securities and Exchange Commission, *SEC Settles
with Rhino Advisors, Thomas Badian* (Feb. 27, 2003),
https://www.sec.gov/news/press/2003-26.htm (describing enforcement actions
taken by the SEC in a transaction involving a similar note and describing the
SEC's concern with such notes).

1    generally rejected the view that a conversion option with a discounted rate

2    should be treated as interest.[5]

3           In *Sanomedics*, for example, the court concluded that a convertible

4    option did not make the note in question usurious:

5           [U]sury laws apply only to loans or forbearances, not
6           investments. Although the initial transactions were loans, which
7           were clearly not usurious . . . the Securities Purchase Agreement
8           provided that, upon conversion, [Defendant] was selling
9           securities . . . to [Plaintiff] as an "investor." . . . While a loan may
10          not be disguised as an investment as a cover for usury, . . . upon
11          conversion at [P]laintiff's election . . . [Defendant's] debt to
12          [P]laintiff [would] become an investment, upon which [P]laintiff
13          took the risk that the stock could be completely worthless.
14
15   2015 WL 7429581 at *10. But the reasoning of other decisions of New York

16   courts complicates this conclusion. In *Blue Wolf Capital Fund II*, for example,

17   the Appellate Division wrote that "[t]o determine whether a transaction is

18   usurious, courts look not to its form but to its substance or real character. If

19   an instrument provides that the creditor will receive additional payment in

20   the event of a contingency beyond the borrower's control, the contingent

---

[5] *See, e.g., Sanomedics*, 2015 WL 7429581, at *10; *AJW Partners, LLC v. Cyberlux Corp.*, No. 603098/07, 2008 WL 4514171, at *5 (N.Y. Sup. Ct. Sept. 19, 2008).

1    payment constitutes interest within the meaning of the usury statutes." 105

2    A.D.3d at 183.

3           The district courts of this Circuit have generally concluded that a

4    conversion option at a discounted rate does not violate usury laws.[6] In *Blue*

5    *Citi LLC v. 5Barz International Inc.*, for example, the district court noted that

6    usury laws apply only to loans, not to equity investments. 338 F.Supp.3d at

7    335. "Once a loan's principal is converted to shares, the transaction takes

8    on the character of an equity investment. . . ." *Id*. In *Union Capital, LLC v.*

9    *Vape Holdings Inc.*, the district court wrote:

10          [Defendant] argues that, in considering the effective interest rate,
11          the Court should also include the potential profit [Plaintiff]
12          might reap by converting shares at a 42% discount. The Court
13          disagrees. [Plaintiff] simply held an option to convert shares, and

---

[6] *See, e.g., EMA Fin., LLC v. Joey New York, Inc.*, No. 17-cv-9706 VSB, 2019 WL 4600863 (S.D.N.Y. Sept. 22, 2019); *LG Capital Funding v. PositiveID Corp.*, No. 17-cv-1297 NGG SJB, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019); *EMA Fin., LLC v. AIM Expl., Inc.*, No. 18-cv-145 ER, 2019 WL 689237 (S.D.N.Y. Feb. 19, 2019); *Blue Citi LLC v. 5Barz Int'l Inc.*, 338 F.Supp.3d 326 (S.D.N.Y. 2018); *LG Capital Funding, LLC v. AIM Expl., Inc.*, No. 17-cv-3118 DAB, 2018 WL 4119149 (S.D.N.Y. Aug. 29, 2018); *Adar Bays, LLC v. 5Barz Int'l, Inc.*, No. 16-cv-6231 NRB, 2018 WL 3962831 (S.D.N.Y. Aug. 16, 2018); *LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 307 F.Supp.3d 84 (E.D.N.Y. 2018); *Adar Bays, LLC v. AIM Expl., Inc.*, 285 F.Supp.3d 698 (S.D.N.Y. 2018); *Union Capital, LLC v. Vape Holdings Inc.*, No. 16-cv-1343 RJS, 2017 WL 1406278 (S.D.N.Y. Mar. 31, 2017); *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, No. 16-cv-5176 JPO, 2017 WL 913791 (S.D.N.Y. Mar. 7, 2017).

1    it could have elected to obtain repayment in cash, which would
2    clearly not have been usurious. Moreover, even if [Plaintiff]
3    chose to convert the loan principal into shares, any potential
4    profit [Plaintiff] might realize would still be dependent on the
5    market price at the time of conversion and so, therefore, would
6    be too uncertain to incorporate into an interest rate calculation.
7    Furthermore, even if the discount rate could be considered[,] a
8    usury defense could no longer be applied against the loan once
9    the Note principal was converted into equity in [Defendant].

10

11 2017 WL 1406278 at *5.[7] Despite the number of cases from New York state

12 and federal courts confronting this issue, no definitive resolution has

13 emerged. Because such a resolution hinges on an interpretation of New

14 York law having important public policy implications, with potential

15 applications to many different types of financial transactions, we seek the

16 guidance of the New York Court of Appeals. This case, we believe, frames

17 the dispositive issues.

---

[7] Indeed, as alluded to in *Union Capital*, 2017 WL 1406278 at *12–13, investors in notes of the type at issue in this case may still face the risk that, upon disclosure of the loan or other financial issues faced by the borrower, the market for equity in the borrowing company can become so illiquid that the converting lender cannot find a counterparty for any sales and is left holding the proverbial bag. In that sense, unlike a payment of cash, the lender, even in loans like the one at issue here, takes on additional risk by choosing to convert principal to equity.

1     Accordingly, we certify the following question to the Court of

2 Appeals: *Whether a stock conversion option that permits a lender, in its sole*

3 *discretion, to convert any outstanding balance to shares of stock at a fixed discount*

4 *should be treated as interest for the purpose of determining whether the transaction*

5 *violates N.Y. Penal Law § 190.40, the criminal usury law.*

6                                              **II.**

7     Civil usury is governed by N.Y. Gen. Oblig. Law § 5-501 *et seq.* [8]

8 Section 5-501 provides that no person shall charge, take or receive any

9 money, goods or things in action as interest on the loan of any money,

10 goods or things in action at a rate exceeding 16% per annum. Section 5-511

11 states that contracts providing for loans with an interest of "any greater

12 sum, or greater value . . . than is prescribed in section 5-501 shall be void."

13     Criminal usury, on the other hand, is governed by N.Y. Penal Law §

14 190.40, which provides that a lender is guilty of criminal usury when "he

---

[8] N.Y. Gen. Oblig. Law § 5-521 provides that "[n]o corporation shall hereafter interpose the defense of usury in any action" but provides that this exclusion "shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law."

1    knowingly charges, takes or receives any money or other property . . . at a

2    rate exceeding twenty-five per centum per annum." Unlike § 5-511,

3    § 190.40 contains no provision for voiding contracts that violate the

4    provision.

5        District courts in this Circuit have noted that "[i]t is an open question

6    under New York law whether a criminally usurious loan is void *ab initio* or

7    whether a successful defense based on criminal usury results merely in the

8    cancellation of the interest obligation or in a revised obligation to pay a

9    non-usurious rate." *Adar Bays, LLC v. 5 Barz Int'l, Inc.*, 2018 WL 3962831, at

10   *4; *see also Union Capital*, 2017 WL 1406278, at *8; *Blue Wolf Capital Fund II*,

11   105 A.D.3d at 182.

12       GeneSYS, relying on § 5-511, argues that if the conversion discount

13   rate is determined to be interest, then the Note is usurious because it

14   violates § 190.40, and, consequently, is void *ab initio*. Adar Bays takes the

15   position that this result would require reading a provision into § 190.40

16   that the Legislature chose not to include.

1    There is no authoritative guidance on this issue from the Court of

2 Appeals and the existing case law is unclear.[9] The New York Court of

3 Appeals has, however, in circumstances distinct from this case, recognized

4 that "a borrower may be estopped from interposing a usury defense" when

5 its own, intentional actions resulted in the lending contract being declared

6 void, because otherwise the borrower would "achieve a total windfall"

7 from his deceptive actions. *See Seidel*, 598 N.E.2d at 11. In *Seidel*, the Court

8 of Appeals was confronted with a loan where the borrower was involved

9 in drafting the document and negotiating the interest rate, and the lender

10 relied upon the borrower's representations that the transaction was not

11 usurious. *Id.* Here, GeneSYS, advised by counsel, agreed to the 35%

12 discount rate, executed the Note and pocketed the loan proceeds. When

13 Adar Bays attempted to exercise the conversion option, GeneSYS revealed

14 it had already terminated its transfer agent and refused to deliver any

---

[9] For our part, we have noted that "the consequences to a lender of voiding a usurious loan transaction are harsh," and that New York courts thus "have been reluctant to extend them beyond cases that fall squarely under the statutes." *In re Venture Mortgage Fund, L.P.*, 282 F.3d 185, 189 (2d Cir. 2002) (quoting *Rossi v. Hood (ex rel. Estate of Dane)*, 55 A.D. 2d 224, 225 (N.Y. 3d Dep't 1976)).

1    shares or repay any of the outstanding debt. Should the Note now be

2    declared void, GeneSYS will walk away with the entirety of the loan—

3    achieving what could be viewed as a "total windfall" at the expense of

4    Adar Bays.

5         Given these considerations and the lack of statutory authority or

6    precedent from the New York Court of Appeals, we certify the following

7    question to the Court of Appeals: *If the interest charged on a loan is determined*

8    *to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is*

9    *void* ab initio *pursuant to N.Y. Gen. Oblig. Law § 5-511.*

10                            CERTIFICATION

11        Pursuant to the rules of the New York Court of Appeals, "[w]henever

12   it appears to . . . any United States Court of Appeals . . . that determinative

13   questions of New York law are involved in a case pending before that court

14   for which no controlling precedent of the Court of Appeals exists, the court

15   may certify the dispositive questions of law to the Court of Appeals." 22

16   N.Y.C.R.R. § 500.27(a); *see also* 2d Cir. R. 27.2(a) ("If state law permits, the

17

1    court may certify a question of state law to that state's highest court."). We

2    conclude that certification of these two questions is appropriate.

3           Our decision to certify questions to the Court of Appeals is

4    discretionary, and when exercising that discretion we consider whether: (1)

5    "the New York Court of Appeals has not squarely addressed an issue and

6    other decisions by New York courts are insufficient to predict how the

7    Court of Appeals would resolve it"; (2) "the statute's plain language does

8    not indicate the answer"; (3) "a decision on the merits requires value

9    judgments and important public policy choices that the New York Court of

10   Appeals is better situated than we to make"; and (4) "the questions

11   certified will control the outcome of the case." *See Penguin Grp. (USA) Inc.*

12   *v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). Each of these factors weighs in

13   favor of certification in this case.

14          The New York Court of Appeals has not addressed either question

15   certified here, and similar questions have not "been litigated in New York

16   courts often enough that sufficient precedents exist for us to make a

17   determination concerning their proper outcome." *Commodity Futures*

1    *Trading Comm'n v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010). Neither of the

2    questions is resolved by the text of the relevant statutes. Both questions

3    turn on policy determinations that the Court of Appeals is best suited to

4    make, including the balance of interests of short-term lenders and high-risk

5    debtors. The answers to these questions will have important ramifications

6    for New York's financial community. Finally, the questions certified will

7    control the outcome of the case. *See Penguin Grp. (USA) Inc.*, 609 F.3d at 42.

8    Because these factors weigh in favor of certification, we certify the

9    questions formulated above and restated below.

10                                 CONCLUSION

11        We hereby certify the following questions to the New York Court of

12   Appeals:

13        1.  *Whether a stock conversion option that permits a lender, in its sole*

14            *discretion, to convert any outstanding balance to shares of stock at a*

15            *fixed discount should be treated as interest for the purpose of*

16            *determining whether the transaction violates N.Y. Penal Law*

17            *§ 190.40, the criminal usury law.*

                                      19

1        2. *If the interest charged on a loan is determined to be criminally*

2        *usurious under N.Y. Penal Law § 190.40, whether the contract is*

3        *void* ab initio *pursuant to N.Y. Gen. Oblig. Law § 5-511.*

4        We invite the Court of Appeals to reformulate these questions as it

5  sees fit or expand them to address any other issues of New York law that

6  would assist this Court in determining whether discounted conversion

7  rates are interest pursuant to N.Y. Penal Law § 190.40 and whether N.Y.

8  Gen. Oblig. Law § 5-511 can be read to void criminally usurious loans.

9        It is hereby ORDERED that the Clerk of this Court transmit to the

10  Clerk of the New York Court of Appeals this opinion as our certificate,

11  together with a complete set of briefs, appendices, and the record filed in

12  this case by the parties. This panel retains jurisdiction for purposes of

13  resolving this appeal once the New York Court of Appeals has responded

14  to our certification.

1                                **CERTIFICATE**

2          The foregoing is hereby certified to the New York Court of Appeals

3   pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a), as ordered by

4   the United States Court of Appeals for the Second Circuit.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

21